BENNETT, APPELLEE, *v.* OHIO DEPARTMENT OF REHABILITATION AND CORRECTION ET AL., APPELLANTS.

[Cite as Bennett *v.* Ohio Dept. of Rehab. & Corr. (1991), 60 Ohio St. 3d 107.]

(No. 90-1178—Submitted March 13, 1991—Decided June 5, 1991.)

108

*Patrick A. T. West*, for appellee.

*Lee I. Fisher*, attorney general, *Jeffrey R. Goldsmith* and *Simon B. Karas*, for appellants.

MOYER, C.J. The state contends that the judgment of the court of appeals should be reversed for three reasons. First, the state argues that plaintiff cannot maintain a common-law false imprisonment claim because the initial taking of his liberty was lawful pursuant to the trial court's six-month sentence. Second, the state contends that plaintiff's true claim is one for "parole revocation improprieties" and therefore cannot be maintained because no such cause of action exists between private parties, as is required for the state to be liable in the Court of Claims under R.C. 2743.02(A)(1). Finally, the state argues that the court of appeals ignored the limits of the wrongful imprisonment statute, R.C. 2743.48, by "judicially expand[ing]" the scope of the definition of "wrongfully imprisoned individual" under that statute. For the reasons that follow, we reject the state's contentions and affirm the judgment of the court of appeals.

For purposes of a Civ. R. 12(C) motion for judgment on the pleadings, the material allegations of plaintiff's complaint and all reasonable inferences arising therefrom must be accepted as true. *Peterson* v. *Teodosio* (1973), 34 Ohio St. 2d 161, 165-166, 63 O.O. 2d

262, 264, 297 N.E. 2d 113, 117. In so construing plaintiff's complaint, we must assume that the state knowingly or intentionally confined plaintiff for six months beyond the expiration of his sentence.

Plaintiff alleged that the prison officials "intentionally and wrongfully kept * * * [him] confined * * * beyond expiration of his sentence * * *." Plaintiff essentially alleged that there was no colorable basis for his confinement after June 10, 1985. His sentence had expired on that date, but no parole revocation hearing had been held, and no revocation order had been entered. Furthermore, no revocation hearing was held after June 10. The lack of a parole revocation hearing after June 10 raises the legal question of whether prison officials at some point lost the legal authority to hold plaintiff for the sole purpose of conducting such a hearing. See R.C. 2967.15; Ohio Adm. Code 5120:1-1-19; *Coleman* v. *Stobbs* (1986), 23 Ohio St. 3d 137, 23 OBR 292, 491 N.E. 2d 1126.

Plaintiff further alleged that prison officials "refused" to release him even though he had filed complaints in state and federal court. In light of his allegation that he was not released until the officials' brief was "overdue" in state court, it can be inferred that the prison officials' delay in the face of the state court complaint was substantial. The allegation that officials "refused * * * from June 11 to December 17" also suggests that plaintiff had made earlier informal requests for release that were denied. In short, plaintiff's allegations support the conclusion that prison officials were notified of the alleged lack of any colorable basis for plaintiff's confinement, but nevertheless continued to confine him for some period of time thereafter.

False imprisonment occurs when a person confines another intentionally " 'without lawful privilege and against his consent within a limited area for any appreciable time, however short.' " *Feliciano* v. *Kreiger* (1977), 50 Ohio St. 2d 69, 71, 4 O.O. 3d 158, 159, 362 N.E. 2d 646, 647, quoting 1 Harper & James, The Law of Torts (1956) 226, Section 3.7. This court recognized the continuing nature of the "confinement" element of this tort in *State, ex rel. Kemper*, v. *Beecher* (1847), 16 Ohio 358, 363, when it stated that "each day's continuance of the body of a person in custody, is a distinct trespass, and may be treated as such." Consequently, plaintiff was "confined" for each of the days he was held by the state.

Because of the continuing nature of the false imprisonment tort, it is clear that a person who intentionally confines another cannot escape liability by arguing that he or she was initially privileged to impose the confinement. Once the initial privilege expires, the justification for continued confinement expires and possible liability for false imprisonment begins. See *Leger* v. *Warren* (1900), 62 Ohio St. 500, 57 N.E. 506, paragraph one of the syllabus; 1 Restatement of the Law 2d, Torts (1965) 67, Section 45 ("If the actor is under a duty to release the other from confinement, * * * his refusal to do so with the intention of confining the other is a sufficient act of confinement to make him subject to liability."). The state therefore cannot justify plaintiff's six months of incarceration after June 10, 1985 by reference to a prison sentence that expired on that date. We hold that in the absence of an intervening justification, a person may be found liable for the tort of false imprisonment if he or she intentionally continues to confine another despite knowledge that the privilege initially justifying that con-

finement no longer exists. Plaintiff's allegations state a justiciable claim for false imprisonment under this test.

Because plaintiff alleged a knowing or intentional failure to follow the law, we have no occasion herein to determine whether there is a cause of action for an official's negligent failure to follow the law in releasing a prisoner. We reject, however, the state's assertion that habeas corpus is the exclusive remedy for unlawful confinement. Habeas corpus is merely one means of obtaining a person's release from custody; it does not preempt a claim for damages.

The state's second contention is that the state is immune from liability on the false imprisonment claim because the claim is really for "parole revocation improprieties" and therefore is not based on "the same rules of law applicable to suits between private parties * * *." See R.C. 2743.02(A)(1). The state's argument relies upon two appellate court opinions which suggest that the state cannot be held liable because "a private party does not operate a prison system, [and] has no duty to incarcerate criminals * * *." *Ross* v. *Shoemaker* (1981), 3 Ohio App. 3d 31, 32, 3 OBR 33, 34, 443 N.E. 2d 1025, 1026. See *Hahn* v. *Brown* (1976), 51 Ohio App. 2d 177, 179, 5 O.O. 3d 323, 325, 367 N.E. 2d 884, 886.

However, the rationale used in these appellate cases has been, in effect, overruled by this court's holding in *Reynolds* v. *State* (1984), 14 Ohio St. 3d 68, 14 OBR 506, 471 N.E. 2d 776, where we determined that the state could be held liable for negligence *per se* for "the failure to confine * * * [a furloughed] prisoner during nonworking hours in accordance with R.C. 2967.26(B)." *Id.* at paragraph two of the syllabus. *Reynolds* allowed liability even though the ultimate basis for that liability was a statute that governs the release of prisoners. If the distinction stated in *Ross* and *Hahn* had applied, *i.e.*, that private parties do not have the duty to incarcerate prisoners, then *Reynolds* would not have found liability.

Just as liability for negligence *per se* in *Reynolds* could be based on the state's failure to comply with a statute governing the confinement of furloughed prisoners, false imprisonment liability may be based on the state's failure to comply with statutes mandating the release of prisoners. The tort of false imprisonment is a rule of law that is generally applicable to private parties. Consequently, pursuant to R.C. 2743.02(A)(1), the state may be held liable for the false imprisonment of its prisoners. The state cannot avoid that liability in this case merely because the lawfulness of its asserted privilege to confine plaintiff must be determined by legal principles governing alleged "parole revocation improprieties."

The state's third claim is that the court of appeals "judicially expanded" the scope of the wrongful imprisonment statute, R.C. 2743.48. The state's argument, however, erroneously assumes that this statute provides the exclusive damages remedy for prisoners who prove improper incarceration.

R.C. 2743.48 addresses a narrow legal problem by providing compensation to innocent persons who have been wrongfully convicted and incarcerated for a felony. R.C. 2743.48(A)(1) to (5). The enactment of R.C. 2743.48 was necessary to authorize compensation because the state, even after the waiver of sovereign immunity in R.C. 2743.02, remained generally immune from lawsuits by persons who were wrongfully convicted and incarcerated.

This immunity derived from the law governing false imprisonment. As

stated in *Diehl* v. *Friester* (1882), 37 Ohio St. 473, 475, "an action for false imprisonment cannot be maintained where the wrong complained of is imprisonment in accordance with the judgment or order of a court, unless it appear that such judgment or order is void." See *Brinkman* v. *Drolesbaugh* (1918), 97 Ohio St. 171, 119 N.E. 451, paragraphs five and six of the syllabus; *Johns* v. *State* (1981), 67 Ohio St. 2d 325, 21 O.O. 3d 204, 423 N.E. 2d 863, paragraph one of the syllabus, certiorari denied (1982), 455 U.S. 944. R.C. 2743.48 abolished this immunity for purposes of the state's liability to "wrongfully imprisoned individuals." In summary, R.C. 2743.48 does not replace the false imprisonment tort but, rather, supplements it to allow a recovery in some cases when recovery was not available before.

For the foregoing reasons, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

SWEENEY, HOLMES, DOUGLAS, H. BROWN and RESNICK, JJ., concur.

WRIGHT, J., not participating.