DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Wood County Court of Common Pleas granting the motion for judgment on the pleadings filed by appellee, Keneco Distributors, Inc. ("Keneco"). For the following reasons, we affirm, in part, and reverse, in part, the decision of the trial court.
The following facts are not in dispute. On March 29, 1991, Tiina Panksepp was driving her vehicle when it was involved in a collision with a pick-up truck driven by Douglas Rath. Panksepp had attempted a left turn from Mermill Road onto State Route 25 ("S.R.25") in Liberty Township, Wood County, when she was struck by Rath's vehicle. Panksepp and three of her four passengers, Stephanie L. Sanders, Kevin M. Wolfe, and Margaret M. Quinn, died as a result of this collision. The fourth passenger in Panksepp's vehicle, Sara J. Newlove, sustained superficial injuries.
Rath was an uninsured motorist. At the time of the accident, Panksepp had uninsured motorist ("UM") coverage with appellant, Cincinnati Insurance Company ("Cincinnati"). Cincinnati paid out a total of $300,000 for personal injury to Newlove, and the estates of Panksepp, Sanders, Wolfe, and Quinn. In addition, Cincinnati paid to these five claimants a total of $5,000 pursuant to the medical payments coverage provision of Panksepp's policy.
On March 17, 1993, Cincinnati and the administrators for the estates of Panksepp, Sanders, and Wolfe, sued Rath, Keneco, and government entities in Liberty Township. Panksepp, Adm., etal. v. Keneco Distributors, Inc., et al., Wood C.P. No. 93-CV-091, unreported. The plaintiffs in that action alleged that Rath was negligent in the operation of his pick-up truck, and that Keneco was negligent because of its placement of two advertising signs along S.R.25, which allegedly obstructed Panksepp's view of oncoming traffic. Keneco filed a third-party complaint against the Ohio Department of Transportation ("ODOT") and the entire cause of action was removed to the Ohio Court of Claims. Prior to trial, Keneco settled the claims of the estates of Wolfe, Sanders, and Panksepp. These plaintiffs dismissed Keneco with prejudice. Rather than proceeding to trial, Cincinnati dismissed its subrogation claim against Keneco without prejudice. Panksepp v. Keneco Distributors, Inc. (Nov. 1, 1994), Ct. of Cl. No. 93-15003-PR, unreported.
On December 28, 1994, Cincinnati filed the present action against Keneco in the Wood County Court of Common Pleas. Cincinnati alleged that Keneco negligently caused the accident by having placed two advertising signs in the highway right-of-way which obstructed Panksepp's view of oncoming traffic. Cincinnati sought to recover the $305,000 in damages it paid as a result of its UM coverage. Additionally, Cincinnati averred that Keneco violated the zoning ordinance of Liberty Township in the placement of its signs, thereby constituting negligence per se.
On March 13, 1995, Keneco filed a third-party complaint against the ODOT seeking indemnification on the basis that ODOT was jointly negligent by allowing a nuisance to exist, i.e., permitting the signs to be placed within the right-of-way. Following the filing of Keneco's third-party complaint, this matter was removed to the Court of Claims. Cincinnati Ins. Co. v.Keneco Distributors, Inc., Ct. of Cl. No. 95-03720-PR, unreported. The Court of Claims bifurcated the third-party complaint from Cincinnati's complaint and proceeded to trial, on November 14, 1996, on the third-party complaint. On March 7, 1997, the Court of Claims determined that the location of the signs in the right-of-way was not a proximate cause of the accident and, therefore, granted judgment in favor of ODOT and against Keneco on its third-party complaint. Keneco appealed this decision to the Franklin County Court of Appeals. The Tenth District Court of Appeals affirmed the decision of the Court of Claims. Cincinnati Ins. Co. v. Keneco Distributors, Inc. (Nov. 14, 1997), Franklin App. No. 97API04-459, unreported.
The action between Cincinnati and Keneco returned to and proceeded before the Wood County Court of Common Pleas. On February 1, 1999, Keneco filed a "RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS." Keneco argued that Cincinnati did not have a valid subrogation cause of action and, therefore, it was entitled to a judgment on the pleadings, pursuant to Civ.R. 12(C). Specifically, Keneco asserted that, pursuant to United Ohio Ins.Co. v. Faulds (1997), 118 Ohio App.3d 351, an insurer who settles a UM claim with its insured, pursuant to a UM provision, does not acquire the remedy of an independent cause of action against an insured joint tortfeasor. Rather, to sustain such an action, Cincinnati must join its insureds in the action against Keneco. Keneco asserted that because Cincinnati's insureds had already settled their claims with Keneco, pursuant to Faulds, Cincinnati did not possess an independent subrogation cause of action against Keneco.
Cincinnati filed a memorandum in opposition to Keneco's motion for judgment on the pleadings and, in the alternative, moved to join Sara Newlove and the estate of Margaret Quinn. Specifically, Cincinnati asserted that it is contrary to law to rule that a subrogated insurer cannot sue an insured joint tortfeasor to recover payments made under a UM policy. Relying onBlackburn v. Hamoudi (Sept. 18, 1990), Franklin Co. App. No. 89AP-1102, unreported, Cincinnati asserted that it has a subrogated right of recovery to collect amounts paid pursuant to its UM coverage from an insured joint tortfeasor. Cincinnati also asserted that Faulds was distinguishable from this case because Cincinnati asserted a subrogation claim rather than a claim for contribution. Alternatively, in the event that the trial court required Cincinnati to join its insureds in the pending lawsuit, in order to have an enforceable cause of action against Keneco, Cincinnati sought to join Newlove and the Quinn estate. Cincinnati pointed out that it originally filed suit against Keneco along with three of its insureds (the estates of Panksepp, Wolfe, and Sanders) and, therefore, should be permitted to join the Quinn estate and Newlove as plaintiffs to maintain the action against Keneco.
Keneco replied that Cincinnati's motion to join Newlove and the Quinn estate was without merit. Keneco asserted that the statute of limitations had expired as to the Quinn estate and, therefore, any wrongful death claim possessed by the Quinn estate against Keneco would be time-barred. Additionally, Keneco asserted that Newlove, as well as the estates of Panksepp, Wolfe, and Sanders, had already released all claims asserted against Keneco. As such, Keneco argued that because Newlove had released any claim which she possessed against Keneco, joinder of Newlove as a party plaintiff would be improper.
On March 19, 1999, the Wood County Court of Common Pleas granted Keneco's motion for judgment on the pleadings. The trial court held that Cincinnati did not have an independent cause of action against a primary tortfeasor (Keneco) where that primary tortfeasor had already settled the claims of the injured parties. Relying on our decision in Faulds, the trial court reasoned that a tortfeasor could not be required to pay both an injured party and the UM carrier more than the total amount of damages caused by the tortfeasor. Hence, the trial court found that the total damages to be paid by Keneco could be determined only in an action involving both Cincinnati and its insureds. However, the trial court denied Cincinnati's request to join Newlove and the Quinn estate. The trial court held that Newlove previously brought her negligence action against Keneco in Wood C.P. No. 92-CV-023 (Ct. of Cl. No. 95-06028-PR) and that she had released any and all claims against Keneco and dismissed that action with prejudice. As to the Quinn estate, the trial court held that any attempt to file such an action today would be dismissed pursuant to the two year wrongful death statute of limitations, R.C. 2125.02(D). Accordingly, the trial court held "[a]s the Quinn Estate would be time barred to assert its claim independently, it would also be time barred to assert the same claim as a joined plaintiff in this cause."
Cincinnati timely appealed the decision of the trial court and raises the following assignments of error:
"Assignment of Error No. 1:
 "The trial court erred to the prejudice of Plaintiff-Appellant The Cincinnati Insurance Company by granting Defendant-Appellee's Renewed Motion for Judgment on the Pleadings.
"Assignment of Error No. 2:
 "The trial court erred to the prejudice of Plaintiff-Appellant The Cincinnati Insurance Company by denying Plaintiff-Appellant's motion to join."
Initially we note that a Civ.R. 12(C) motion presents only questions of law and that a determination of such is restricted to the allegations in the pleadings. Fischer v.Morales (1987), 38 Ohio App.3d 110, 112, citing Peterson v.Teodosio (1973), 34 Ohio St.2d 161, 165-166. In considering a motion for judgment on the pleadings, the nonmoving party is entitled to have all material allegations in the complaint, with all reasonable inferences to be drawn therefrom, construed in his or her favor as true. Bennett v. Ohio Dept. of Rehab. Corr.
(1991), 60 Ohio St.3d 107, 108; Fischer v. Morales, supra. To grant a dismissal on the pleadings pursuant to Civ.R. 12(C), a court must find, beyond a doubt, that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. Lin v. Gatehouse Constr. Co. (1992), 84 Ohio App.3d 96,99. If, after reviewing the pleadings, a court finds that there exist no material issues of fact and the moving party is entitled to judgment as a matter of law, the moving party's motion for judgment on the pleadings, pursuant to Civ.R. 12(C), should be granted. Calhoun v. Supreme Court of Ohio (1978), 61 Ohio App.2d 1,6.
Cincinnati asserts that an insurer's right of subrogation gives the insurer a separate and independent cause of action against any tortfeasor. Citing, in part, Hoosier Cas. Co.v. Davis (1961), 172 Ohio St. 5, paragraph two of the syllabus, and Nationwide Ins. Co. v. Steigerwalt (1970), 21 Ohio St.2d 87, paragraph two of the syllabus. Cincinnati is correct that, to the extent an insurer has a right of subrogation for property damagepayments made to its insured, the insurer can bring an independent cause of action against the tortfeasor. See Hoosier andSteigerwalt, supra. However, we have previously held that "* * * the right of subrogation authorized by R.C. 3937.18(E) does not confer, even by written assignment in a subrogation agreement or contractual language to the contrary, on an uninsured/ underinsured motorist carrier a right to maintain an independent cause of action in negligence against a fully insured joint tortfeasor." Faulds, 118 Ohio App.3d at 356.
R.C. 3937.18(E) states, in pertinent part:
 "(E) In the event of payment to any person under the coverages offered under this section and subject to the terms and conditions of such coverages, the insurer making such payment to the extent thereof is entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury or death for which such payment is made, including any amount recoverable from an insurer which is or becomes the subject of insolvency proceedings, through such proceedings or in any other lawful manner. * * *"
Hence, a carrier that pays its insured, pursuant to the terms of a UM policy, has a subrogated right of recovery against any person legally responsible for its insured's bodily injury. R.C.3937.18(E); Bogan v. Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22,29, modified and explained on other grounds, McDonald v.Republic-Franklin Ins. Co. (1989), 45 Ohio St.3d 27; and Blackburnv. Hamoudi (Sept. 18, 1990), Franklin App. No. 89AP-1102, unreported. Subrogation is defined as "[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." Black's Law Dictionary (5 Ed.Rev. 1979) 1279.
In construing R.C. 3937.18(E), however, we determined a narrow exception to this general right of subrogation with respect to UM carriers seeking reimbursement from fully insured joint tortfeasors. Faulds, supra. We found that a UM carrier was entitled to reimbursement from any person legally responsible for its insured's bodily injury, including a fully insured joint tortfeasor, see Blackburn, supra; however, pursuant to R.C.3937.18(E), we held that a UM carrier could not bring its own independent action in negligence. Faulds at 355. Rather, we held that the UM carrier was entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of its insured against any person legally responsible for the insured's bodily injury. See R.C. 3937.18(E). As stated inFaulds:
 "The language of this statute is clear and unambiguous in stating that entitlement to repayment is the result of the action of the injured party or parties against a joint tortfeasor. It does not provide the uninsured carrier with the right to, under the aegis of subrogation, to obtain an assignment of the injured party's negligence claim against a fully insured joint tortfeasor." Faulds at 356.
Therefore, in order for a UM carrier to sustain an action against a joint tortfeasor, we found that it was necessary for the insured, who held the personal injury cause of action, to be joined in the action. Faulds, supra.
The facts in Faulds are similar to the case at hand. Members of the Steffens family were injured in an automobile accident involving the Steffens' vehicle, and vehicles operated by Douglas Damschroder and William Faulds. The Steffens had UM coverage with United Ohio Insurance Company. Subsequent to the accident, Damschroder, an uninsured motorist, filed for bankruptcy. The Steffens filed a negligence action against Faulds and United, as their UM carrier. Faulds was insured up to $300,000 per accident. Eventually, the Steffens voluntarily dismissed, without prejudice, their case against Faulds. Subsequently, the Steffens settled with United in the amount of $300,447.47, under both the medical payments[1] and UM provisions of the Steffens' motor vehicle policy. In return, the Steffens' assigned United rights of subrogation against Faulds. Soon after, United alone filed a negligence action against Faulds as the sole defendant. None of United's insureds were named as a party to the suit.
In Faulds, we held that, despite United's claims, the nature of the action brought by United against Faulds was actually for contribution from a joint tortfeasor. Faulds at 357. R.C. 2307.32(C) sets forth the circumstances under which an insurer is subrogated to its insured's right of contribution:
 "A liability insurer that by payment has discharged in full or in part the liability of a tortfeasor and has discharged in full by the payment its obligation as insurer is subrogated to the tortfeasor's right of contribution to the extent of the amount it has paid in excess of the tortfeasor's proportionate share of the common liability. * * *" R.C. 2307.32(C).
In Westfield Ins. Co. v. Jeep Corp. (1988), 55 Ohio App.3d 109,111, we held that "[f]rom the express language of the statute it is clear that an insurance company must discharge a tortfeasor" in order to be subrogated to an insured's right of contribution. Where an insurer simply fulfills its contractual promise to pay underinsured benefits, it has not discharged any tortfeasor, and therefore is not entitled to contribution from a tortfeasor.Westfield at 111. In Faulds, because United had not released any tortfeasor when it provided UM coverage to the Steffens, we held that it could not seek contribution from Faulds.
In this case, Cincinnati did not release any tortfeasor when it provided UM coverage to its insureds; rather, it only fulfilled a contractual duty. See Westfield, supra. As such, Cincinnati is not entitled to contribution from Keneco. Nevertheless, Cincinnati asserts that it is entitled to reimbursement for the UM coverage it provided pursuant to its rights of subrogation.
Cincinnati correctly argues that Blackburn, supra, held that a UM carrier has a subrogated right of recovery against any person legally responsible for the bodily injury that was paid for by the UM carrier to its insured. However, in Blackburn, the insureds brought the negligence action against the tortfeasor and the UM carrier was permitted to intervene. To the contrary, in this case, Cincinnati alone sued Keneco. Moreover, in Faulds, we considered Blackburn and found that it was consistent with our decision. Faulds at 356 ("the Tenth Appellate District [inBlackburn] recognized the necessity of joinder of the insured who holds the personal injury cause of action in order for recovery of amounts paid to that insured by an uninsured motorist carrier from a joint tortfeasor").
Accordingly, based on our decision in Faulds andWestfield, supra, we find that Cincinnati does not have an independent cause of action against Keneco with respect to the funds it paid pursuant to the terms of its UM coverage. Cincinnati can only assert its claim against Keneco arising out of UM coverage in an action brought by Cincinnati's insureds. See R.C.3937.18(E). See, also, Faulds, supra. Cincinnati was the sole plaintiff in this action. As such, with respect to the UM coverage Cincinnati provided its insureds, Cincinnati has failed to prove any set of facts that would entitle it to relief from Keneco. See Lin, supra. Accordingly, we find that the trial court did not err in granting Keneco's motion for judgment on the pleadings in this regard.
We find, however, that Cincinnati did make medical payments pursuant to the terms of its coverage, totaling $5,000. These medical payments were not made pursuant to Cincinnati's UM coverage. With respect to the medical payments, we find that Cincinnati would be subrogated to the rights of its insureds against the tortfeasor and could pursue its claim independently against Keneco. See Smith v. Travelers Ins. Co. (1977), 50 Ohio St.2d 43. See, also, Bogan, supra at 29. However, "[i]t is axiomatic to the doctrine of subrogation that the rights of the insurer are no greater than those of the insured and, further, that a release * * * is an effective defense against later actions by an insurer pursuant to its right of subrogation." Bogan at 30. See, also, Toney v. Cincinnati Ins. Co. (Oct. 25, 1999), Stark App. No. 1999CA00092, unreported. Accordingly, the releases signed by the insureds could potentially provide Keneco with a defense with respect to these medical payments; however, that is a factual matter in this case and is not properly determined in a motion for judgment on the pleadings.
Cincinnati also argues that because it originally filed its subrogation action against Keneco along with the estates of Panksepp, Wolfe, and Sanders, Keneco's motion should not have been granted. We find, however, that these insureds are no longer parties to this action as they all previously dismissed their causes of action against Keneco.
Accordingly, we find that Cincinnati has no independent cause of action against Keneco with respect Cincinnati's claim for reimbursement of UM coverage, either under its right of subrogation or contribution. However, insofar as Cincinnati has established a set of facts that could entitle it to relief from Keneco with respect to medical payments, we find that the trial court erred in granting Keneco its motion for judgment on the pleadings in this regard. Therefore, we find Cincinnati's first assignment of error not well-taken, in part, and well-taken, in part.
In its second assignment of error, Cincinnati asserts that the trial court erred in denying its request to join two of its insureds. In the event that the trial court required Cincinnati to join its insureds in the pending lawsuit, in order to have an enforceable cause of action against Keneco, Cincinnati sought to join Newlove and the Quinn estate. On appeal, Cincinnati asserts that Civ.R. 17(A) required that it be allowed a reasonable time to join the real parties in interest and, therefore, it was error for the trial court to deny its request.
We find that the trial court properly denied Cincinnati's motion to join. With respect to Cincinnati's request to join Newlove, we find that Newlove had previously released Keneco. As such, Newlove could sustain no cause of action against Keneco. Insofar as Cincinnati's subrogated rights are no greater than those of its insured, Newlove's release effectively bars later actions by Cincinnati pursuant to its right of subrogation or contribution. See Bogan, supra at 30.
With respect to joinder of the Quinn estate, Cincinnati correctly points out that Civ.R. 17(A) provides that joinder of a real party in interest "shall have the same effect as if the action had been commenced in the name of the real party in interest." However, Cincinnati presumes that joinder of the Quinn estate would relate back to the original complaint filed in March 1993. To the contrary, we find that the Quinn estate was not a necessary party in that lawsuit. There was adequate party representation to effectively prosecute that matter. Therefore, at best, joinder of the Quinn estate would relate back to December 28, 1994, the filing date of this lawsuit. As such, the trial court properly held that Quinn's action would exceed the applicable two-year statute of limitations. See R.C. 2125.02(D). Cincinnati's subrogated rights are no greater than its insured's. Hence, insofar as the Quinn estate would be time barred to assert its claim against Keneco, it would be futile to allow Cincinnati to join the Quinn estate in the present action.
Accordingly, we find that the trial court did not err to Cincinnati's prejudice in denying its request to join its insureds. Cincinnati's second assignment of error is therefore found not well-taken.
On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Wood County Court of Common Pleas is affirmed, in part. However, with respect to the medical payments paid by Cincinnati pursuant to its policy, this matter is reversed and remanded to the trial court for further proceedings. Costs of this appeal are to be shared equally by the parties.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ Melvin L. Resnick, J., JUDGE
 _______________________________ James R. Sherck, J., JUDGE
 _______________________________ Richard W. Knepper, J., JUDGE
CONCUR.
[1] The trial court sent the medical payment portion of the suit to arbitration. United dismissed this aspect of the case in order to bring its appeal.
 COURT OF APPEALS DECISIONS NOVEMBER 19, 1999