OPINION
{¶ 1} Defendant-appellant, Department of Rehabilitation and Correction ("DRC"), appeals from a judgment of the Court of Claims of Ohio that granted summary judgment in favor of plaintiff-appellee, Alton M. Stroud ("Stroud"), who claimed DRC falsely imprisoned him. Because we find no reversible error, we affirm.
 {¶ 2} On April 10, 1998, a federal district court sentenced Alton M. Stroud to a ten-month term of incarceration for a violation of supervised release related to a weapons charge.
 {¶ 3} Before Stroud was sent to federal prison, he appeared in the Franklin County Court of Common Pleas. On May 14, 1998, before the common pleas court, pursuant to Crim.R. 11, Stroud pled guilty to one count of burglary, a felony of the second degree. Two other counts that were contained in an indictment were dismissed by a nolle prosequi. Pursuant to Stroud's guilty plea, the common pleas court imposed a two-year sentence with 50 days of jail-time credit. However, the common pleas court did not specify whether Stroud's two-year sentence was to be served concurrently with or consecutively to Stroud's ten-month federal sentence.
 {¶ 4} Following Stroud's guilty plea on May 14, 1998, Stroud was incarcerated in the Franklin County, Ohio, jail until June 2, 1998; subsequently, Stroud was transported to a federal prison to serve the federal prison sentence.
 {¶ 5} After Stroud finished serving the federal sentence, Stroud was released to an Ohio detainer[1] and held in a West Virginia jail until Stroud's return to Ohio. On January 20, 1999, Stroud was returned to the Franklin County, Ohio, jail and was thereafter transferred to DRC's custody on February 26, 1999.
 {¶ 6} Subsequently, on several occasions, Stroud moved for jail-time credit.[2] In response to Stroud's request for credit for time spent between May 14, 1998, the date of Stroud's sentencing in state court, and Stroud's return to Ohio following his federal imprisonment, the common pleas court credited Stroud with an additional 58 days. (Decision filed July 22, 1999.)
 {¶ 7} Later, on January 27, 2000, Stroud petitioned the Court of Appeals, Fourth Appellate District for a writ of habeas corpus. Finding Stroud was being held unlawfully, the appellate court granted Stroud's request for a writ of habeas corpus and ordered Stroud to be released immediately. Stroud was released from state prison on June 2, 2000.
 {¶ 8} On January 26, 2001, in the Court of Claims of Ohio, Stroud filed a complaint, which he later amended. In his amended complaint, Stroud alleged the DRC falsely imprisoned him from January 27, 2000, until June 2, 2000. Stroud sought $15,900 in compensatory damages as well as costs and any other legal and equitable relief that was permitted by law.
 {¶ 9} On December 19, 2001, pursuant to Civ.R. 56, Stroud moved for summary judgment concerning the issue of liability. DRC cross-moved for summary judgment. On February 5, 2002, the trial court denied Stroud's motion for summary judgment and DRC's cross-motion for summary judgment.
 {¶ 10} Subsequently, on April 24, 2002, the case was tried before Judge Russell Leach concerning the issue of damages. Prior to presentation of the evidence, the parties agreed to submit the issue of liability to the trial court upon written stipulations. However, following a hearing concerning damages, and before stipulations were filed and judgment rendered, Judge Leach died. Accordingly, the case was reassigned to another judge.
 {¶ 11} On August 19, 2002, the trial court vacated its February 5, 2002, order that denied Stroud's motion for summary judgment and DRC's cross-motion for summary judgment. The case was submitted to the trial court upon the parties' motions for summary judgment along with accompanying affidavits and exhibits.
 {¶ 12} On January 14, 2003, the trial court granted summary judgment in favor of Stroud and awarded $7,820 to him. In its judgment, the trial court also denied DRC's cross-motion for summary judgment.
 {¶ 13} On February 13, 2002, DRC appealed to this court and requested assignment of the case to the accelerated calendar. However, pursuant to Loc.R. 4(D)(2) of the Tenth District Court of Appeals, this court later sua sponte transferred the appeal to the court's regular calendar and scheduled a prehearing conference.
 {¶ 14} In its appeal, DRC assigns a single error:
The trial court erred, to the prejudice of the Appellant, the Ohio Department of Rehabilitation and Correction, in granting summary judgment to Plaintiff on the issue of false imprisonment for a period of seventy days where the plaintiff-prisoner had made repeated requests and motions to the sentencing judge to credit him for the seventy days in question, and the sentencing judge had repeatedly turned down the plaintiff-prisoner's requests and motions for that credit.
 {¶ 15} Appellate review of a lower court's granting of summary judgment is de novo. Mitnaul v. Fairmount PresbyterianChurch, 149 Ohio App.3d 769, 2002-Ohio-5833, at ¶ 27. "`Denovo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.'" Id., quoting Brewer v. Cleveland Bd. of Edn. (1997),122 Ohio App.3d 378, citing Dupler v. Mansfield Journal Co.,Inc. (1980), 64 Ohio St.2d 116, 119-120, certiorari denied (1981), 452 U.S. 962, 101 S.Ct. 3111. Summary judgment is proper when a movant for summary judgment demonstrates: (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp.Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 16} Under Civ.R. 56(C), a movant bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Once a movant discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial.Dresher, at 293; Vahila v. Hall (1997), 77 Ohio St.3d 421,430; Civ.R. 56(E).
 {¶ 17} Here, DRC asserts it never held Stroud beyond the term of Stroud's sentence as imposed by the common pleas court. Furthermore, according to DRC, by granting summary judgment in favor of Stroud, the Court of Claims improperly placed an affirmative duty upon DRC to ignore the common pleas court's determination that Stroud was not entitled to credit for time served in federal prison.
 {¶ 18} For his part, Stroud asserts DRC's liability stems from its failure to apply R.C. 2929.41 and Ohio Adm. Code5120-2-03 when DRC learned Stroud's state sentence was imposed after Stroud's federal prison term. See, generally, former R.C.2929.41(A);[3] Ohio Adm. Code 5120-2-03(B);[4] and Ohio Adm. Code 5120-2-031(D).[5]
 {¶ 19} In this case, the issues of whether Stroud's state-imposed sentence should have been served concurrently with his ten-month federal sentence and whether he was unlawfully held were decided in Stroud v. Lazaroff (June 1, 2000), Pickaway App. No. 00 CA 09 ("Stroud I").
 {¶ 20} According to Stroud I:
* * * Jail time credit pursuant to R.C. 2967.191 is distinguishable from the issue of whether sentences should be served consecutively or concurrently pursuant to R.C. 2929.41. The trial court's denial of jail credit time is not resjudicata on the issue of whether Stroud's sentence for burglary should have been served consecutive to or concurrently with his imprisonment in federal prison.
R.C. 2929.41 provides, in pertinent part:
"(A) * * * a sentence of imprisonment shall be served concurrently with any other sentence of imprisonment imposed by a court of this state, another state, or the United States. * * *"
Here, in its May 1998 Entry, the Franklin County Court of Common Pleas sentenced Stroud to two years, a month after the ten month sentence imposed by the federal court on April 10, 1998. Therefore, pursuant to the language of R.C. 2929.41, Stroud's term "shall be served concurrently."
 * * *
Upon consideration, this court finds that Stroud's sentence of two years has expired, that he is being held unlawfully, that he has no adequate remedy at law and is entitled to the Writ of Habeas Corpus he requested. * * *
 {¶ 21} "Collateral estoppel (issue preclusion) prevents parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit."Thompson v. Wing (1994), 70 Ohio St.3d 176, 183. "Collateral estoppel applies when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." Id. at 183, citingWhitehead v. Gen. Tel. Co. (1969), 20 Ohio St.2d 108, paragraph two of the syllabus. Moreover, "[a]s a general matter, privity is `merely a word used to say that the relationship between the one who is party on the record and another is close enough to include that other within the res judicata.'" Thompson, at 184, quotingBruszewski v. United States (C.A. 3, 1950), 181 F.2d 419, 423
(Goodrich, J., concurring).
 {¶ 22} Here, R.C. 5120.05[6] authorizes DRC to maintain, operate, manage, and govern state correctional institutions. Therefore, based on this authority, we find DRC's relationship to Alan Lazaroff, Warden of the Orient Correctional Institution of Pickaway County, Ohio, at the time Stroud petitioned for a writ of habeas corpus, is close enough to conclude DRC is bound by the determination of the Stroud I
court wherein the court concluded Stroud's state sentence was to be served concurrently with Stroud's ten-month federal sentence and Stroud was unlawfully held.
 {¶ 23} Consequently, because the issue of whether Stroud was unlawfully held (1) was actually and directly litigated in a prior suit, (2) was passed upon and previously determined by a court of competent jurisdiction, and (3) because we have concluded DRC is in privity with Lazaroff, the party to the prior action in Stroud I, supra, we conclude DRC in this appeal is collaterally estopped from relitigating the issue of whether Stroud was unlawfully held.
 {¶ 24} Therefore, the matter then resolves to a determination whether DRC is liable for the tort of false imprisonment.
 {¶ 25} "False imprisonment occurs when a person confines another intentionally `"without lawful privilege and against his consent within a limited area for any appreciable time, however short."'" Bennett v. Ohio Dept. of Rehab. Corr. (1991),60 Ohio St.3d 107, 109, quoting Feliciano v. Kreiger (1977),50 Ohio St.2d 69, 71, quoting 1 Harper James, The Law of Torts (1956) 226, Section 3.7. Moreover, "`each day's continuance of the body of a person in custody, is a distinct trespass, and may be treated as such.'" Bennett, at 109, quoting State ex rel.Kemper v. Beecher (1847), 16 Ohio 358, 363.
 {¶ 26} "In the absence of an intervening justification, a person may be found liable for the tort of false imprisonment if he or she intentionally continues to confine another despite knowledge that the privilege initially justifying that confinement no longer exists." Bennett, at paragraph one of the syllabus. Moreover, "[p]ursuant to R.C. 2743.02(A)(1), the state may be held liable for the false imprisonment of its prisoners."Bennett, at paragraph two of the syllabus. But, see, id., at 110 (finding in Bennett that the court had "no occasion herein to determine whether there is a cause of action for an official's negligent failure to follow the law in releasing a prisoner").
 {¶ 27} Relying on this court's decision in State ex rel.Corder (1991), 68 Ohio App.3d 567, motion to certify overruled,62 Ohio St.3d 1484, DRC maintains it was required to continue to hold Stroud pursuant to orders from the common pleas court. See, e.g., Corder, at 573 ("[t]here is simply no statutory provision conferring a right upon the Adult Parole Authority to ignore the trial court determination of the number of days and to substitute its own in complying with the mandate of R.C. 2967.191").
 {¶ 28} However, Corder is distinguishable from the present case because in Corder this court construed former R.C.2967.191, not R.C. 2929.41(A).
 {¶ 29} In this case, former R.C. 2929.41(A), in effect at the time the common pleas court sentenced Stroud, provided that "[e]xcept as provided in division (B) of this section, division (E) of section 2929.14, or division (D) or (E) of section 2971.03
of the Revised Code, a sentence of imprisonment shall be served concurrently with any other sentence of imprisonment imposed by a court of this state, another state, or the United States."
 {¶ 30} In State v. Cook (May 20, 1987), Montgomery App. No. 10017, an appellate court considered whether a trial court violated a defendant's right to have his Ohio sentences served concurrently with a Michigan sentence, in the absence of a specification by the trial court to the contrary. Construing former R.C. 2929.41(A) and (B)(1), the appellate court determined "where the sentencing entries are silent, the Ohio sentences will automatically be treated as concurrent with the Michigan sentence by operation of R.C. 2929.41(A)." Thus, construing Cook, supra, we find former R.C. 2929.41(A) was self-executing and required DRC to calculate Stroud's expiration of sentence date in accordance with its provisions. See, e.g., State ex rel. Vickersv. Summit Cty. Council, 97 Ohio St.3d 204, 2002-Ohio-5583, at ¶31, quoting Black's Law Dictionary (7th Ed. 1999) 1364 (observing that "[s]elf-executing means merely that [a] section is `effective immediately without the need of any type of implementing action'"). See, also, State v. White (1985),18 Ohio St.3d 340, syllabus ("[f]ormer R.C. 2929.41(E)(2), now (E)(3), is self-executing, automatically operating to limit the aggregate minimum sentencing term to fifteen years").
 {¶ 31} Accordingly, DRC's reliance upon Corder, supra, is not persuasive.
 {¶ 32} Here, DRC had an independent duty to follow the self-executing mandate of former R.C. 2929.41(A) and to calculate Stroud's expiration of sentence date concurrently with his ten-month federal sentence. DRC failed to follow former R.C.2929.41(A)'s self-executing mandate.
 {¶ 33} DRC's contention that it never held Stroud beyond the term of Stroud's sentence as imposed by the common pleas court is unavailing. Although the issue of jail-time credit is relevant to DRC's calculation of Stroud's expiration of sentence date, see, e.g., R.C. 2967.191 (credit for time awaiting trial and commitment), the issue of whether Stroud was entitled to jail-time credit is distinct from whether DRC failed to calculate Stroud's state sentence in a manner required by former R.C.2929.41(A).
 {¶ 34} Stated differently, not only was DRC required to properly apply jail-time credit as determined by the common pleas court, see Corder, supra, at 573, but, additionally, under former R.C. 2929.41(A), DRC had an independent duty to properly calculate Stroud's expiration of sentence date concurrently with Stroud's ten-month federal sentence.
 {¶ 35} Moreover, even construing the evidence most strongly in DRC's favor, we are not persuaded by DRC's claim that it had no knowledge that the privilege initially justifying Stroud's confinement in a state correctional institution no longer existed.
 {¶ 36} Here, as early as March 9, 1999, DRC was aware that Stroud, prior to his state incarceration, had been in federal custody. (Affidavit of Karen Sorrell dated January 17, 2002.)[7] Nevertheless, despite DRC's knowledge that Stroud had served a federal sentence prior to DRC's custody of Stroud, and despite DRC's knowledge of former R.C. 2929.41(A), and its own administrative regulations, i.e., Ohio Adm. Code5120-2-03(B)[8] and 5120-2-031(D),[9] DRC continued to hold Stroud.
 {¶ 37} Therefore, notwithstanding the common pleas court's determination concerning jail-time credit, given DRC's knowledge that Stroud had served a federal sentence prior to DRC's custody of Stroud and DRC's knowledge of former R.C. 2929.41(A), and Ohio Adm. Code 5120-2-03(B) and 5120-2-031(D), which required a prison term to be served concurrently, not aggregated with a federal sentence, unless excepted, we are not persuaded by DRC's claim that it had no knowledge that the privilege initially justifying Stroud's confinement in a state correctional institution no longer existed.
 {¶ 38} Furthermore, even construing the evidence most strongly in DRC's favor, we also must conclude DRC intentionally, rather than unintentionally, continued to confine Stroud. Here, under the facts of this case, DRC willingly, knowingly, and purposely continued to confine Stroud. See, e.g., 1 Restatement of the Law 2d, Torts (1965) 15, Section 8A ("`intent' * * * denote[s] that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it"); Feliciano, supra, at 71, quoting 1 Harper and James, The Law of Torts (1956) 226, Section 3.7 (defining "false imprisonment" as intentionally confining another without lawful privilege and against another's consent within a limited area for any appreciable time, however short).
 {¶ 39} Additionally, we are also not persuaded by DRC's contention that, by granting summary judgment in Stroud's favor, the Court of Claims improperly placed an affirmative duty upon DRC to ignore the common pleas court's determination that Stroud was not entitled to credit for time served in federal prison. Rather, by granting summary judgment in Stroud's favor, the Court of Claims correctly reaffirmed DRC's obligation to follow its own regulations and the self-executing mandate of former R.C.2929.41(A) when calculating a prisoner's expiration of sentence date.
 {¶ 40} Therefore, because in the absence of an intervening justification, the state may be found liable for the tort of false imprisonment if it intentionally continues to confine a prisoner despite knowledge that the privilege initially justifying the prisoner's confinement no longer exists,Bennett, supra, at paragraphs one and two of the syllabus; and, because, even construing the evidence most strongly in DRC's favor, no genuine issue of material fact exists; and because we find reasonable minds could come to but one conclusion and that conclusion is adverse to DRC; we therefore overrule DRC's single assignment of error.
 {¶ 41} Accordingly, for the foregoing reasons, having overruled DRC's assignment of error and finding Stroud is entitled to judgment as a matter of law, we hereby affirm the judgment of the Court of Claims of Ohio.
Judgment affirmed.
Bowman, J., concurs.
Lazarus, P.J., dissents.
[1] According to the record, apparently both the Franklin County, Ohio, Prosecutor, and the Franklin County, Ohio, Sheriff placed a detainer against Stroud. See October 9, 1998, Detainer Action Letter to prosecutor's office, and November 5, 1998, letter from sheriff placing a detainer against Stroud.
[2] According to evidence in the record, Stroud filed motions on March 30, 1999 (motion for jail credit), August 17, 1999 (motion for jail-time credit), October 6, 1999 (motion for jail-time credit), October 13, 1999 (motion for certification of time served while in federal prison), and on December 22, 1999 (motion for certification of time served while in federal prison).
[3] Former R.C. 2929.41(A), in effect at the time the common pleas court sentenced Stroud, provided that "[e]xcept as provided in division (B) of this section, division (E) of section 2929.14, or division (D) or (E) of section 2971.03 of the Revised Code, a sentence of imprisonment shall be served concurrently with any other sentence of imprisonment imposed by a court of this state, another state, or the United States."
[4] Ohio Adm. Code 5120-2-03(B) provides that "[a]ny sentence of imprisonment to the department of rehabilitation and correction shall be served concurrently, not aggregated, with any other sentence of imprisonment imposed by a court of this state, another state, or the United States, except as provided in paragraph A of this rule."
[5] Ohio Adm. Code 5120-2-031(D), effective March 13, 1998, provides that "[a]ny prison term shall be served concurrently, not aggregated, with any other prison term imposed by a court of this state, another state, or of the United States, except as provided in paragraphs (B) and (C) of this rule."
[6] R.C. 5120.05, effective March 17, 1998, in pertinent part, provides that "[t]he department or rehabilitation and correction may maintain, operate, manage, and govern all state institutions for the custody, control, training, and rehabilitation of persons convicted of crime and sentenced to correctional institutions."
Prior to March, 17, 1998, former R.C. 5120.05, effective October 6, 1994, in pertinent part, provided: "Except as otherwise provided as to appointments by chiefs of divisions, the director of rehabilitation and correction shall appoint the employees that are necessary for the efficient conduct of the department of rehabilitation and correction and shall prescribe their titles and duties. The department may maintain, operate, manage, and govern all state institutions for the custody, control, training, and rehabilitation of persons convicted of crime and sentenced to correctional institutions."
[7] According to Sorrell's affidavit, "On March 9, 1999, DRC received a call from the judge's bailiff explaining that Stroud had been in federal custody, but advising that Stroud was only entitled to the 50 days of credit awarded in the entry and that he was not entitled to the days spent in federal custody between May 14, 1998 and February 26, 1999"). See, also, id. (averring that on April 16, 1999, DRC contacted the prosecutor's office regarding Stroud's sentence and was advised the prosecutor would request the judge to send an entry granting federal time served. However, on July 27, 1999, DRC received an entry only granting 108 days of credit).
[8] See footnote 4, supra.
[9] See footnote 5, supra.