[Cite as *Bell v. Ohio Dept. of Rehab. & Corr.*, 2009-Ohio-7033.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us


REAMER BELL

    Plaintiff

    v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

    Defendant
    Case No. 2003-01121

Judge J. Craig Wright
Magistrate Steven A. Larson

## MAGISTRATE DECISION


{¶ 1} Plaintiff brought this action against defendant, the Ohio Department of Rehabilitation and Correction, alleging false imprisonment. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} Plaintiff contends that he was unlawfully held by defendant beyond the expiration of his prison sentence. Plaintiff's incarceration began in 1992. He was furloughed, then paroled three times; however, each of those paroles were revoked. While on parole in October 1997, plaintiff was indicted on four new felony offenses and, in February 1998, he was returned to prison. Plaintiff's claims are based upon two theories: 1) that defendant miscalculated his release date by failing to properly apply his jail-time credit; and, 2) that procedural and due process errors were made with regard to his parole which caused him to be unjustly declared to be a parole violator, or that unjustly caused his parole to be revoked and, thus, caused his sentence to be improperly extended.

{¶ 3}  Defendant contends that this court lacks jurisdiction either to review parole board decisions or to consider constitutional claims and that, even if the court were to have jurisdiction, any such claims would be barred by the two-year statute of limitations.

{¶ 4}  The law is clear that there is no constitutional or statutory right to parole. *State ex rel. Seikbert v. Wilkinson*, 69 Ohio St. 3d 489, 490, 1994-Ohio-39.  Rather, "R.C. 2967.03 vests discretion in the APA [Ohio Adult Parole Authority] to 'grant a parole to any prisoner, if in its judgment there is reasonable ground to believe that * * * such action would further the interests of justice and be consistent with the welfare and security of society.'"  Id.  The statute "creates no expectancy of parole or a constitutional liberty interest sufficient to establish a right of procedural due process."  Id. citing *Hattie v. Anderson*, 68 Ohio St.3d 232, 233, 1994-Ohio-517; *State ex rel. Adkins v. Capots* (1989), 46 Ohio St.3d 187, 188.

{¶ 5}  It is also well-settled that the state is immune from liability for its legislative or judicial functions, or for the exercise of executive functions that involve a high degree of official judgment or discretion.  *Reynolds v. State* (1984), 14 Ohio St.3d 68, 70, *Von Hoene v. State* (1985), 20 Ohio App.3d 363, 364.  Inasmuch as an APA decision to grant, deny, or revoke parole is an executive function involving a high degree of official judgment or discretion, it has consistently been held that an inmate cannot sue the state in the Court of Claims for an alleged illegal procedure in the parole process.  See, e.g., *State ex rel. Blake v. Shoemaker* (1983), 4 Ohio St.3d 42, 43; *Ross v. Shoemaker* (1981), 3 Ohio App.3d 31, 32.  Accordingly, this court is without jurisdiction to review the allegations of unjust or erroneous parole board determinations asserted in the instant case.

{¶ 6}  To the extent that plaintiff's claims assert violations of the 5th and 14th Amendments to the Constitution of the United States and Article I, Section 2 of the Ohio Constitution, the court also lacks jurisdiction.  It is well established that claims premised upon the violation of constitutionally guaranteed rights state a claim for relief under 42

U.S.C. 1983.  *Jett v. Dallas Indep. School Dist.* (1989), 491 U.S. 701.  Inasmuch as the state is not a "person" within the meaning of that section, such actions may not be brought against the state in the Court of Claims.  See, e.g., *Burkey v. Southern Ohio Correctional Facility* (1988), 38 Ohio App.3d 170; *White v. Chillicothe Correctional Institution* (Dec. 29, 1992), Franklin App. No. 92AP-1230.

**{¶ 7}** Plaintiff's remaining claim is that of false imprisonment.  False imprisonment is defined as an intentional confinement of an individual in the absence of an intervening justification, despite knowledge that the privilege initially justifying the confinement no longer exists.  *Bennett v. Ohio Dept. of Rehab. & Corr.* (1991), 60 Ohio St.3d 107.  However, such an action cannot be maintained where the wrong complained of is imprisonment in accordance with the judgment or order of a court.  *Brinkman v. Drolesbaugh* (1918), 97 Ohio St. 171.  Defendant maintains that it had an absolute privilege to confine plaintiff in accordance with valid sentencing orders of the Hamilton County Court of Common Pleas.

**{¶ 8}** Upon review of the testimony, evidence, and post-trial memoranda of the parties, the court finds as follows.

**{¶ 9}** On June 5 and November 27, 1991, plaintiff was indicted in Hamilton County under Case Nos. B91-3347 and B91-7461, respectively.  (Defendant's Exhibits A and B.)

**{¶ 10}** On February 26, 1992, plaintiff entered guilty pleas in both Case Nos. B91-3347 and B91-7461.  In Case No. B91-3347, plaintiff was sentenced to a definite term of six months, to be served concurrently with the sentence imposed in Case No. B91-7461.  (Defendant's Exhibit C.)  In Case No. B91-7461, plaintiff was sentenced to an indefinite term of two-to-ten years to be served concurrently with the sentence in Case No. B91-3347.  (Defendant's Exhibit D.)

**{¶ 11}** On March 16, 1992, plaintiff was conveyed to defendant's Correctional Reception Center (CRC) together with copies of his indictments, sentencing entries, and sheriff's letters.  According to those documents, plaintiff was entitled to jail-time credit in

Case No. B91-3347 for time served from May 14 to June 17, 1991, (34 days) and from October 5, 1991, to March 16, 1992, (163 days) a total of 197 days. In Case No. B91-7461, plaintiff was to receive credit for time served from October 24, 1991, to March 16, 1992, a total of 144 days. (Defendant's Exhibits E and F.)

**{¶ 12}** Based upon the above-referenced documentation, plaintiff's six-month sentence in Case No. B91-3347, reduced by 197 days of jail-time credit, had already expired when he arrived at CRC. With respect to the sentence in Case No. B91-7461, former R.C. 2967.191[1] provided that plaintiff was entitled to a reduction from both his minimum and maximum sentence for jail-time credit. In addition, pursuant to former R.C. 2967.19,[2] plaintiff was entitled to a reduction from his minimum sentence for "good time"; however, such reduction did not apply against plaintiff's maximum sentence. Accordingly, DRC staff calculated plaintiff's release date to be October 21, 2001; ten years from the date of his March 16, 1992 admission, less 144 days of jail-time credit.

**{¶ 13}** Plaintiff contends that the 197 days of credit granted in Case No. B91-3347 should have been applied to each of his cases inasmuch as they were to be served concurrently. He further contends that, at a minimum, the 17-day difference between the 180-day sentence imposed in Case No. B91-3347 and the 197 days of credit granted in that case should have been applied to Case No. B91-7461. Plaintiff also argues that his maximum sentence should have been reduced for good time. The court disagrees.

---

[1]Former R.C. 2967.191, provided in pertinent part that "[t]he adult parole authority shall reduce the minimum and maximum sentence or the definite sentence of a prisoner by the total number of days that the prisoner was confined for any reason *arising out of the offense for which he was convicted and sentenced*, * * *." (Emphasis added.)

[2]Former R.C.2967.19(A) provided in pertinent part that "a person confined in a state penal or reformatory institution is entitled to a deduction *from his minimum or definite sentence* of thirty per cent of the sentence, prorated for each month of the sentence during which he faithfully has observed the rules of the institution." (Emphasis added.)

{¶ 14} Former R.C. 2767.191 specifically provided that jail-time credit was to be applied to time served for the particular offense for which an individual was convicted and sentenced. See also *State ex rel. Moss v. Subora* (1987), 29 Ohio St.3d 66. In plaintiff's case, the offense for which he was sentenced under Case No. B91-3347 was committed in early May 1991; the offense in Case No. B91-7461 was committed in October 1991. In essence, plaintiff is seeking credit for time served prior to the time that the offenses in Case No. B91-7461 were committed. There simply is no authority to support plaintiff's position that he should have received 197 days of jail-time credit in Case No. B91-7461 for offenses that were the subject of Case No. B91-3347, nor for the unused 17 days of credit granted in that case.

{¶ 15} Further, pursuant to former R.C. 2967.19, good time, unlike jail-time credit, was available to reduce only a minimum or definite sentence, but not an inmate's maximum sentence. See, e.g., *State ex rel Lanham v. Ohio Adult Parole Authority*, 80 Ohio St.3d 425, 1997-Ohio-104; *State ex rel Bealler v. Ohio Adult Parole Authority*, 91 Ohio St.3d 36, 2001-Ohio-231; *Hanes v. Haviland*, 93 Ohio St.3d 465, 2001-Ohio-1589; *Rollins v. Haviland*, 93 Ohio St.3d 590, 2001-Ohio-1884; *Ridenour v. Randle*, 96 Ohio St.3d 90, 2002-Ohio-3606.

{¶ 16} The court concludes that the manner in which defendant calculated jail-time credit on plaintiff's concurrent sentences, and the good-time credit on his minimum sentence in Case No. B91-7461, was proper and consistent with the law.

{¶ 17} Plaintiff also contends that his maximum sentence was improperly extended to June 13, 2002. Plaintiff's arguments in this regard are largely based upon alleged procedural irregularities and constitutional violations which were previously addressed. However, to the extent that plaintiff's release date was otherwise miscalculated, or that he was held beyond the date that defendant's lawful privilege to confine him had expired, the court has examined the documentation extensively and finds as follows.

{¶ 18} On September 28, 1992, plaintiff was furloughed with the specification that the furlough would remain in effect until such time as he became eligible for parole. (Defendant's Exhibit I.)  In February 1993, plaintiff was granted his first parole, effective March 1, 1993.  (Defendant's Exhibit J.)

{¶ 19} In the fall of 1993, plaintiff absconded from supervision and, as of October 13, 1993, he was officially declared a parole violator at large (PVAL).  (Defendant's Exhibit K.)  Plaintiff was subsequently arrested on December 19, 1993, but was restored to parole status on that same date.  (Defendant's Exhibit II, Pages 95, 98.)  The APA sanctioned plaintiff with "lost time" of two months and six days for the period of time between October 13 and December 19, 1993, when his whereabouts were unknown. (Defendant's Exhibits L and M.)   In accordance with former R.C. 2967.15 (C)(1),[3] plaintiff's maximum release date was therefore extended from October 21, 2001, to December 27, 2001.  (Defendant's Exhibit M.)

{¶ 20} On April 27, 1994, plaintiff was again declared a PVAL.  (Defendant's Exhibit N.)  He was arrested on June 6, 1994, and his lost time was subsequently determined to be one month and nine days.  (Defendant's Exhibit 0.)   Plaintiff's maximum release date was then recalculated to February 6, 2002.  (Defendant's Exhibit P.)   On August 2, 1994, plaintiff was returned to prison as a technical parole violator and his parole was formally revoked following a hearing on August 24, 1994. (Defendant's Exhibit G.)

{¶ 21} On June 29, 1995, plaintiff was paroled for the second time.  (Defendant's Exhibit Q.)  On December 6, 1995, he was declared a PVAL for the third time.  He was

---

[3] Former R.C.2967.15(C)(1)provided that "[t]he time between the date on which a parolee, furloughee, or other releasee is declared to be a violator or violator at large and the date on which that person is returned to custody in this state under the immediate control of the adult parole authority shall not be counted as time served under the sentence imposed on that person."

arrested on January 3, 1996, which resulted in lost time of 27 days.  Plaintiff's parole was thereafter revoked effective February 12, 1996.  (Defendant's Exhibit S.)

{¶ 22} On February 24, 1997, plaintiff was paroled for the third time. (Defendant's Exhibit T.)  On July 2, 1997, he was declared a PVAL for the fourth time. (Defendant's Exhibit U.)  He was restored to parole status effective October 9, 1997, but for the time between July 2 and October 9, 1997, plaintiff was charged with an additional 99 days of lost time.  (Defendant's Exhibits V and W.)  The maximum expiration of his ten-year term was then extended to June 13, 2002.

{¶ 23} Further, while on parole in October 1997, plaintiff was indicted on four new offenses in Hamilton County under Case No. B97-07887.  (Defendant's Exhibit Y.)  He ultimately pleaded guilty to two offenses and on February 3, 1998, he was sentenced to a stated term of two years on each count, to be served concurrently, with 118 days of jail-time credit. (Defendant's Exhibit Z.)

{¶ 24} On February 12, 1998, plaintiff was conveyed to CRC on Case No. B97-07887, with a copy of the indictment and judgment entry, and a sheriff s letter stating that he was entitled to an additional eight days of jail-time credit for the period during which he had been in custody following sentencing.  (Defendant's Exhibit AA.)  The expiration of plaintiff's stated term was calculated to expire on October 8, 1999; or two years with 126 days of jail-time credit. (Defendant's Exhibit CC.)  The stated term was imposed as a result of Am.Sub.S.B. No.2 (S.B.2), effective July 1,1996, which enacted numerous revisions to previous sentencing guidelines.  Among other things, S.B.2 abolished the former R.C. 2967.19 good-time sentence reductions.

{¶ 25} On May 21, 1998, plaintiff's new sentence was aggregated with the unexpired maximum sentence imposed under Case No. B91-7461.  The two sentences were to be served concurrently; however, because the new stated term of two years

would expire prior to the indefinite sentence of two-ten years there was no effect on the maximum expiration date of June 13, 2002.[4] (Defendant's Exhibit DD.)

{¶ 26} On June 24, 1998, plaintiff's parole was formally revoked and, in August 1999 his consideration for a fourth parole on the two-ten-year sentence was continued to the maximum expiration date. (Defendant's Exhibits BB and JJ.) Plaintiff was released on June 13, 2002, upon expiration of his maximum term. (Defendant's Exhibit GG.)

{¶ 27} Other than his procedural and constitutional arguments, plaintiff has pointed to no statutory or case law authority to support his contention that his maximum sentence was improperly extended. There is no evidence that any of the sentencing orders or APA documents relied upon by defendant were invalid. Thus, defendant was statutorily required to confine plaintiff until the term of his imprisonment expired, or he was pardoned or paroled. See R.C. 2949.12; *Williams v. Ohio Dept. of Rehab. & Corr.*, Franklin App. No. 09AP-77, 2009-Ohio-3958. Accordingly, plaintiff's claim of false imprisonment must fail.

{¶ 28} Based upon the forgoing reasons, it is recommended that plaintiff's claims of irregularities in parole board decisions and violations of his constitutional rights be dismissed and that judgment be entered in favor of defendant on plaintiff's claim of false imprisonment.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections,*

---

[4]Subsequent to S.B. 2, Ohio Adm.Code 5120-2-032 (C) provided that: "[w]hen a prison term for a crime committed on or after July 1, 1996, is imposed to run concurrently to a crime committed before July 1, 1996, the expiration date of each term of imprisonment must be determined independently in accordance with the appropriate set of laws. The expected expiration of the term for the crime committed on or after July 1, 1996 in most cases will be determined by diminishing the term by jail credit. The expected expiration of the crime committed before July 1, 1996 in most cases will be determined by diminishing the sentence by good time and jail credit. The sentence with the latest expiration date becomes the controlling sentence regarding the offender's expected release."

Case No. 2003-01121 - 9 - MAGISTRATE DECISION

*any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
STEVEN A. LARSON
Magistrate

cc:

Jennifer A. Adair
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Richard F. Swope
6504 East Main Street
Reynoldsburg, Ohio 43068-2268

Magistrate Steven A. Larson

LH/cmd
Filed November 25, 2009/To S.C. reporter December 29, 2009