NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0574n.06

No. 13-4502

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 13, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ROCIO ANANI SAUCEDO-CARRILLO; ROSA CARRILLO-VASQUEZ, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| UNITED STATES OF AMERICA, | ) ) | OPINION |
| Defendant-Appellee. | ) | |

_____

Before: BOGGS, ROGERS, and STRANCH, Circuit Judges.

BOGGS, Circuit Judge. In 2001, the United States issued visas to Plaintiffs-Appellants Rocio Anani Saucedo-Carrillo and her mother, Rosa Carrillo-Vasquez. Saucedo-Carrillo and Carrillo-Vasquez overstayed their visas. On September 13, 2009, while Saucedo-Carrillo was pumping gas into her brother-in-law's truck at a gas station, United States Border Patrol Agent Bradley Shaver approached and spoke with Saucedo-Carrillo and Carrillo-Vasquez. At some point during the conversation, Shaver called in an immigration check, asked Saucedo-Carrillo to move her car into a parking spot, which she did, and took Saucedo-Carrillo and Carrillo-Vasquez into custody. Shaver transported Saucedo-Carrillo and Carrillo-Vasquez to a nearby Border Patrol station, where they were processed and released later that day.

Arguing that this conversation and detention constituted false imprisonment under Ohio law, Saucedo-Carrillo and Carrillo-Vasquez filed suit in federal district court under the Federal Tort Claims Act (FTCA). The United States moved for summary judgment, arguing that the

conversation was voluntary at its inception and that Shaver did not detain the plaintiffs until having reasonable suspicion to do so. The district court granted the motion, and the plaintiffs appealed.

We affirm the judgment of the district court. At the beginning of the encounter, Shaver did not confine Saucedo-Carrillo or Carrillo-Vasquez; Shaver only confined them after the law privileged him to do so.

I

We evaluate the facts as articulated by the depositions of Saucedo-Carrillo and Carrillo-Vasquez. Shaver blocked the front, but not the back, of Saucedo-Carrillo's truck at a gas station. While Saucedo-Carrillo pumped gas and Carrillo-Vasquez sat in the cab of the truck, Shaver asked them a series of questions. Saucedo-Carrillo and Carrillo-Vasquez were scared by Shaver's aggression and harshness, but never declined to answer any questions. In response to one of Shaver's questions, Saucedo-Carrillo admitted that she had overstayed her visa. After this admission, Shaver ultimately drove Saucedo-Carrillo and Carrillo-Vasquez to a Border Patrol station for administrative processing. This lawsuit followed under the FTCA, on a theory of false imprisonment.

False imprisonment requires, among other elements, confinement and absence of lawful authority. At the beginning of the encounter, Saucedo-Carrillo and Carrillo-Vasquez were not confined: they admit that they could have left the encounter by driving the truck in reverse, so it would have been unreasonable for them to believe that Shaver would have prevented such an exit. Shaver did confine them when he asked Saucedo-Carrillo to move her truck, after she admitted that they had overstayed their visas. This admission gave Shaver reason to believe that they were, in fact, in the United States illegally; federal law authorizes the arrest of such illegal

aliens, so, at the end of the encounter, Saucedo-Carrillo and Carrillo-Vasquez were not confined without lawful authority.

A

We review the district court's grant of summary judgment de novo. *See Rannals v. Diamond Jo Casino,* 265 F.3d 442, 447 (6th Cir. 2001). Summary judgment should be awarded only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether there exists a genuine issue of material fact, we must view all evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Thus, for the purposes of reviewing the district court's grant of summary judgment, we assume that the facts are as follows.

Ms. Saucedo-Carrillo and Ms. Carrillo-Vasquez legally entered the United States with six-month visitor visas in 2001. On September 13, 2009, Saucedo-Carrillo went into a Marathon gas station store near Norwalk, Ohio to pay for gas for her blue Chevrolet pickup truck, parked at the pump. Border Patrol Agent Bradley Shaver, in uniform and driving a marked Border Patrol vehicle, made eye contact with her as she left the store. Shaver pulled into the gas station.

Shaver parked his vehicle perpendicularly across the front of the truck in a manner that made it impossible for Saucedo-Carrillo to pull her truck forward to leave. There *was* enough room behind the truck to exit in reverse. Shaver approached Saucedo-Carrillo on foot and asked for her ID. She gave him a Michigan driver's license, and he next asked her for her "papers." She asked what "papers" he meant, and he asked her, "Are you from here?" Saucedo-Carrillo told Shaver that her papers were at home and that she had come with a passport and a visa. He then asked what kind of passport she came with and whether she came in on a tourist visa. He

next asked her about a car seat he spotted in the back of the truck, and she told him that it was for her child, who was with a babysitter. As Shaver questioned Saucedo-Carrillo, he held onto her license and stood less than one meter away from her.

As Saucedo-Carrillo continued to fill the truck with gas, Shaver approached Carrillo-Vasquez, who was still in the truck's passenger seat. He asked her for ID, and she gave him a dental-insurance card. He then asked her for her papers and she said that she had the same visa that Saucedo-Carrillo had.

Saucedo-Carrillo testified that she answered all of Shaver's questions because she "was afraid of him" on account of his aggression and the way that he parked his truck in front of hers. He never touched her during the encounter and never told her that she was not free to leave or that she had to answer his questions.

Carrillo-Vasquez, too, said that she answered all of his questions, and said that this was because "he was harsh. And he scared me." "[H]is authority" and "the way he stopped in front of us" scared her. But Shaver never touched Carrillo-Vasquez, never told her that she was not free to leave, and never said that she must answer his questions.

After Saucedo-Carrillo had told Shaver that she had entered the United States on a visa, Shaver asked Saucedo-Carrillo who owned the truck. She told him that her brother-in-law owned the truck, and that she had "asked him to put the plates in [her] name." Shaver testified that he found it curious that although the truck had a personalized license plate with Saucedo-Carrillo's name, it was not registered in her name. Shaver said he was suspicious because he was aware that in Ohio it is illegal for an undocumented alien to register a vehicle in her own name.

Shaver asked Saucedo-Carrillo if her permit to be in the United States had expired. She replied that it had. Shaver then asked Saucedo-Carrillo to move her car into a parking spot and she complied. He then took both mother and daughter into custody and transported them to the Border Patrol station in nearby Sandusky. Both plaintiffs were administratively processed and released later that day.

On October 15, 2012, Saucedo-Carrillo and Carrillo-Vasquez filed this suit under the FTCA. They also were named plaintiffs in a putative class-action civil-rights suit that the district court dismissed in November 2012. *Muniz-Muniz v. U.S. Border Patrol*, No. 3:09 CV 2865, 2012 WL 5197250 (N.D. Ohio Oct. 19, 2012). On July 15, 2013, the United States moved for summary judgment in this case. On October 21, 2013, the district court granted the motion. Saucedo-Carrillo and Carrillo-Vasquez timely appealed.

B

The FTCA waives the federal government's sovereign immunity in limited contexts, and "is the exclusive remedy for suits against the United States or its agencies sounding in tort." *Himes v. United States*, 645 F.3d 771, 776 (6th Cir. 2011) (citing 28 U.S.C. § 2679(a)). The statute extends the liability of the United States to the intentional torts of false imprisonment and false arrest committed by federal law-enforcement officers. 28 U.S.C. § 2680(h). Under the FTCA, the United States is generally liable for the acts of its employees "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, which means that it is liable for the payment of money damages according to the law of the place where the act or omission occurred—here, Ohio. Before bringing an FTCA claim in court, a claimant must present the claim to the federal agency whose activities gave rise to the injuries and allow the agency the opportunity to settle the claim. *See* 28 U.S.C. § 2675. If the agency takes no

action or—as was the case here—denies the claim, the claimant may then bring suit in federal district court. *See* 28 U.S.C. § 2675(a). Aside from a few exceptions not relevant here, jury trials are not available to plaintiffs bringing claims against the United States under the FTCA. *See* 28 U.S.C. § 2402.

C

Saucedo-Carrillo and Carrillo-Vasquez assert that the Government is liable because Shaver, a federal law-enforcement official, committed the Ohio intentional tort of false imprisonment. Under Ohio common law, false imprisonment requires (1) an intentional confinement (2) taking place in a limited area (3) for any "appreciable time, however short" (4) without lawful privilege and (5) against the detainee's consent. *Bennett v. Ohio Dep't of Rehab. & Corr.*, 573 N.E.2d 633, 636 (Ohio 1991) (quoting *Feliciano v. Kreiger*, 362 N.E.2d 646, 647 (Ohio 1977)).[1]

For the purpose of analyzing this interaction, we divide Shaver's actions by several decision points. *Cf. Bouggess v. Mattingly*, 482 F.3d 886, 890 (6th Cir. 2007). The first part of the encounter occurred prior to Saucedo-Carrillo's admission that her permit to be in the United States had expired. The second part of the encounter occurred thereafter. During the first part of the encounter, Shaver did not confine Saucedo-Carrillo or Carrillo-Vasquez.[2] During the second

---

[1] Some Ohio courts have stated that the essential requisites for maintaining a false imprisonment claim are: "(1) the intentional detention of the person and (2) the unlawfulness of the detention." *Hodges v. Meijer, Inc.*, 717 N.E.2d 806, 809 (Ohio Ct. App. 1998). But these decisions also typically consider whether lawful privilege and consent were present. *See, e.g., ibid*. Ohio law thus distinguishes between the elements of actual confinement, measured objectively, and lack of detainee consent, more subjectively determined, as different elements. We assume, without deciding, that the interaction between Saucedo-Carrillo, Carrillo-Vasquez, and Shaver took place in a limited area, for an appreciable time, and without the express consent of Saucedo-Carrillo and Carrillo-Vasquez.

[2] The United States also argues that the appearance of the truck lawfully authorized Shaver to confine Saucedo-Carrillo and Carrillo-Vasquez. Because we hold that he did not confine them, we need not consider this argument.

part, Shaver confined them with a lawful privilege. Because at no point did Shaver commit false imprisonment, the United States is not liable under the FTCA.

II

A

In Ohio, a plaintiff fails to establish the confinement element of her false-imprisonment claim unless she demonstrates that a person reasonably could believe, based on the defendant's actions, that the defendant would interfere with her departure. For instance, when a plaintiff claims that a law-enforcement officer falsely imprisoned her, the plaintiff fails to establish the confinement element where "there was no evidence . . . that she would have been prevented [from leaving] had she tried . . . ." *Williams v. Franklin Cnty. Bd. of Comm'rs*, 763 N.E.2d 676, 691 (Ohio Ct. App. 2001). In *Williams*, as here, "there was at least one additional means of egress." *Id.* at 692.

Other Ohio decisions on the confinement element of false imprisonment similarly have limited the definition of "confinement." There is no false imprisonment where "there were no words or conduct which could have induced in plaintiff . . . a reasonable belief that she could not have departed . . . without interference" and where "[n]o hands were laid upon her nor was her path barred." *Mullins v. Rinks, Inc.*, 272 N.E.2d 152, 154 (Ohio Ct. App. 1971). "[F]alse imprisonment may not be predicated on a person's unfounded belief that he was restrained . . . ." *Bauman v. Bob Evans Farms, Inc.*, No. 06AP-737, 2007 WL 96969, at *5 (Ohio Ct. App. Jan. 16, 2007). "[M]ere submission to verbal direction, unaccompanied by force or threat, cannot constitute confinement or detention . . . ." *Ferraro v. Phar-Mor, Inc.*, No. 98 CA 48, 2000 WL 459686, at *4 (Ohio Ct. App. Apr. 7, 2000); *see also Lester v. Albers Super Mkts., Inc.*, 114 N.E.2d 529, 532 (Ohio Ct. App. 1952). The defendant's failure to bar all possible means of

egress, especially absent a direct command not to leave, would demonstrate to any reasonable person in the plaintiff's situation that the defendant did *not* intend to confine her.[3]

Here, Saucedo-Carrillo and Carrillo-Vasquez do not claim that they had no other egress. The availability of egress prevents any factfinder from determining that Saucedo-Carrillo and Carrillo-Vasquez could have had a reasonable belief that they were confined. So, during the first part of the encounter, Shaver did not confine Saucedo-Carrilo and Carrillo-Vasquez.

B

Shaver's questioning of Saucedo-Carrillo, even about her immigration status, did not constitute detention. So Shaver did not falsely imprison Saucedo-Carrillo and Carrillo-Vasquez before Saucedo-Carrillo admitted, in response to his lawful question, that she had violated the terms of her permit.

Federal law empowers each Border Patrol agent to arrest an alien whom the agent has reason to believe is in the United States illegally. 8 U.S.C. § 1357(a)(2).[4] We assume, without deciding, that the Fourth Amendment limits those powers. *See, e.g.*, *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010) ("[T]he term 'reason to believe' in § 1357(a)(2) means constitutionally required probable cause."). Saucedo-Carrillo's admission that she had violated the terms of her permit was probable cause for Shaver to believe that she was in the United States illegally. Taken in concert with Carrillo-Vasquez's admissions that she and Saucedo-Carrillo were in the United States on the same visa, it also was reasonable for Shaver to believe

---

[3] The inquiry does not depend on the plaintiff's contemporaneous subjective sense of consent to questioning, let alone an articulation of that consent. Nor could it be otherwise. A more permissive rule requiring affirmative consent would not reflect normal social interaction. A person free to leave is not confined simply because another person, whom she regards as an authority, fails to ask her whether she feels confined.

[4] The plaintiffs argue that the issue of privilege is not properly before this court because the district court granted summary judgment on other grounds below, and therefore did not consider it. Appellant's Reply Br. 6. We disagree. The absence of privilege is an element of false imprisonment and this is not a case where a party is introducing new argument on appeal—both parties have argued it before the district court and have done so again here.

that Carrillo-Vasquez was in the United States illegally. So federal law authorized Shaver to detain Saucedo-Carrillo and Carrillo-Vasquez. He did not falsely imprison them after Saucedo-Carrillo admitted that she had overstayed her visa.

### III

We wish to be clear: Agent Shaver's mere approach to Saucedo-Carrillo and Carrillo-Vasquez was not tortious, even if it displeased them. As we have suggested, false imprisonment does not turn on whether Shaver had probable cause to take Saucedo-Carrillo and Carrillo-Vasquez into custody for violating immigration law because Shaver did not, at the beginning of the encounter, take them into custody. The plaintiffs' subjective view of the matter does not change things. Under Ohio law, the test of actual confinement is whether the defendant *actually confined* the plaintiff, i.e., whether "a reasonable person could believe that confinement occurred." *Kalbfell v. Marc Glassman, Inc.*, No. 02 CO 5, 2003 WL 21505264, at *5 (Ohio Ct. App. June 26, 2003) (holding that defendant confined plaintiff although defendant did not threaten plaintiff with the use of force). Similarly, "*ordering plaintiff to follow*," under certain circumstances, "is sufficient to establish confinement." *Id.* at *4 (emphasis added). But *Kalbfell*, like *Mitles v. Young*, 394 N.E.2d 335 (Ohio Ct. App. 1978), on which it relies, differs from the present case. In *Mitles*, the plaintiff's employer accused him of committing a crime, after which accusation a police officer "asked" him to come to the police station. Here, until Saucedo-Carrillo admitted to having committed a crime, Shaver did not accuse either Saucedo-Carrillo or Carrillo-Vasquez of committing one. Until that admission, he did not ask them to move their car or, indeed, direct their movement in any way. He spoke with them while they continued their activities: Saucedo-Carrillo pumping gas and Carrillo-Vasquez waiting in the car.

These are the actions of a law-enforcement officer speaking with members of his community, not one actively detaining a criminal suspect.

That Saucedo-Carrillo *may* have believed herself to be confined does not demonstrate that a reasonable person would, because we cannot assume that her belief was per se objectively reasonable. In sum, a defendant such as Shaver is not liable for ordinary questioning that a specific plaintiff may consider confining, but that an objectively reasonable person would not.

IV

We have reviewed the facts as presented by Saucedo-Carrillo and Carrillo-Vasquez. Shaver saw them, parked his truck in front of theirs, stood close to them, questioned them about their immigration history and status, and examined their identification cards. But he never touched them, never prevented them from leaving, never told them that they were not free to go, and never told them that they must answer his questions. He learned that Saucedo-Carrillo's car was, technically, her brother-in-law's. Suspecting that she had not registered it because she was in the United States illegally, he asked her to confirm his suspicion. When she did, he arrested her and Carrillo-Vasquez and arranged for their same-day processing and release. They sued on the tort theory of false imprisonment.

Two elements of the Ohio tort of false imprisonment are at issue in this case: actual confinement and lack of lawful authority. In Ohio, where a plaintiff had at least one means of egress from an ordinary conversation, she was not confined. Federal law allows a Border Patrol agent to arrest an alien if he has probable cause to believe that she is an illegal alien. Before Shaver had reason to believe that Saucedo-Carrillo and Carrillo-Vasquez were illegal aliens, he did not confine them. Saucedo-Carrillo's admission provided probable cause for detention.

Saucedo-Carrillo and Carrillo-Vasquez fail to allege facts that would establish false imprisonment. We AFFIRM the judgment of the district court.

STRANCH, Circuit Judge, dissenting. The majority opinion divides the encounter between Agent Shaver and the plaintiffs into two parts: the period leading up to Ms. Saucedo-Carrillo's admission that her visa had expired and the period following that admission. I agree with the majority's conclusion that after that admission Agent Shaver had a lawful privilege to detain both plaintiffs, as Ms. Carrillo-Vasquez had previously stated that she had the same visa as Ms. Saucedo-Carrillo. I cannot agree to affirm the grant of summary judgment to the Government, however, because under the totality of the facts before us and the definition of confinement under Ohio law, a reasonable trier of fact could conclude that Agent Shaver confined the plaintiffs at the gas station well before Ms. Saucedo-Carrillo's admission gave him a privilege to do so. I therefore respectfully dissent.

Here, the reviewing court "must view the facts and any inferences reasonably drawn from them in the light most favorable to the nonmoving party," the plaintiffs in this case. *Griffith v. Coburn*, 473 F.3d 650, 655 (6th Cir. 2007). The pertinent facts are as follows.

Upon making eye contact with Ms. Saucedo-Carrillo, Agent Shaver parked his vehicle perpendicularly across the front of her truck in a manner that made it impossible for her to pull the truck forward to leave, though she could have exited in reverse. Agent Shaver then immediately approached Ms. Saucedo-Carrillo on foot and aggressively asked for her ID. She gave him a Michigan driver's license, and he next asked her for her "papers," and asked what kind of passport she came with and whether she came in on a tourist visa. As Agent Shaver questioned Ms. Saucedo-Carrillo, he held onto her license and stood less than one meter away from her.

According to Ms. Saucedo-Carrillo, Agent Shaver was "very aggressive" from the outset and "was very harsh. It wasn't kind at all. He was just real harsh with his questions. Where do

you live? How far do you live? He wasn't kind at all." R. 28-3, PageID# 340-41. She never declined to answer any of his questions because she "was afraid of him" due to his aggressiveness and the way he parked his truck in front of hers. She explained that "I thought maybe he was going to let me go, but he didn't let me go." *Id*. at 348.

Ms. Carrillo-Vasquez also indicated that Agent Shaver "got real aggressive with us" and that "He wasn't very kind. He didn't even say hello. One is accustomed to saying hello and he didn't say hello. He just asked for an ID." R. 28-2, PageID# 259-60. She, too, said that she never declined to answer any of his questions, and said that this was because "he was harsh. And he scared me." *Id*. at 268. Though Agent Shaver never touched the plaintiffs, Carrillo-Vasquez testified that "his authority" scared her, and "the way he stopped in front of us." When he got out of the car, she asked herself "Well, what did we do? What did we do?" *Id*.

The Ohio intentional tort of false imprisonment requires (1) an intentional confinement (2) taking place in a limited area (3) for any "appreciable time, however short" (4) without lawful privilege and (5) against the detainee's consent. *Bennett v. Ohio Dept. of Rehab. & Corr.*, 573 N.E.2d 633, 636 (Ohio 1991)

Ohio courts employ an objective standard to determine whether a given set of facts constitutes false imprisonment. "[F]alse imprisonment may not be predicated on a person's unfounded belief that [she] was restrained." *Sharp v. Cleveland Clinic*, 891 N.E.2d 809, 814 (Ohio Ct. App. 2008). Rather, to prevail a plaintiff must demonstrate that "a reasonable person could believe that confinement occurred." *Kalbfell v. Marc Glassman, Inc.*, 2003-Ohio-3489, 2003 WL 21505264, at *5 (Ohio Ct. App. June 26, 2003); *accord Ware v. Shin,* 2006-Ohio-976,

2006 WL 513960, at *4 (Ohio Ct. App. March 3, 2006).[5]  Under Ohio law, "submission to the mere verbal direction of another, unaccompanied by force or threats of any character, cannot constitute false imprisonment." *Bauman v. Bob Evans Farms, Inc.,* 2007-Ohio-145, 2007 WL 96969, at *5 n.4 (Ohio Ct. App. Jan. 16, 2007); *see also Ferraro v. Phar-Mor, Inc.* No. 98 CA 48, 2000 WL 459686, at *4 (Ohio Ct. App. April 7, 2000) (same).  However, the word "threat" as used in *Ferraro* does "not necessarily include only an express or explicit threat." *Kalbfell*, 2003 WL 21505264, at *5.  An "implicit threat . . . projected through . . . circumstances including a display of authority" can also create false imprisonment.  *Id.*

*Kalbfell* holds that implied restraint based on a security guard's display of authority can meet the elements of Ohio's false imprisonment tort.  *Id.* at *4-5.  The decision upheld on appeal a judgment in favor of a plaintiff who was mistakenly identified by store employees as a repeat shoplifter previously banned from the premises.  *Id.* at *1.  After misidentifying the plaintiff, the employees publicly summoned store security to the woman's location.  *Id.*  A uniformed guard told her to "[c]ome with me," and escorted her to a back office by walking behind her without touching her.  *Id.*  The guard made a phone call, which the woman believed was to the police, and accused her of shoplifting.  *Id.* at *5. She waited in the office for twenty minutes until a manager told the security guard that he could not ban people from the store.  *Id.* at *1.  The guard then apologized and the woman left the room.  *Id.*  The Ohio Court of Appeals found that a reasonable person could believe confinement occurred under these facts.  *Id.* at *5. Distinguishing *Ferraro*, a case dismissed on summary judgment concerning a store employee's brief detention of a shopper at a checkout counter, the *Kalbfell* court noted that the threat of force

---

[5]The Ohio rule for citations to unpublished opinions provides that "[a]ll opinions of the courts of appeals issued after May 1, 2002 may be cited as legal authority and weighted as deemed appropriate by the courts without regard to whether the opinion was published or in what form it was published." Ohio Supreme Court Rules for the Reporting of Opinions, Rep. Op. R. 3.4, Use of Opinions.

or restraint is stronger when uniformed security is involved than when (as in *Ferraro*) a non-security employee gives a customer an order. *Id.*

*Kalbfell* found additional support for its holding in the Ohio Jury Instructions concerning false arrest and false imprisonment. *Id.* at *4. The instructions define both false arrest and false imprisonment as the "unlawful" "restraint" or "control" by one person over the physical liberty of another, and the instructions provide that the restraint must include an "*actual or implied*" "threat of force" *or* "display of authority." *Id.* (citing former O.J.I. 309.01 (currently O.J.I. 441.01)) (emphasis added). Restraint occurs "if the words, conduct, or display of authority are such as to cause or give rise to a fear or apprehension of force and to overcome the plaintiff's will." *Kalbfell*, 2003 WL 21505264, at *4 (citing O.J.I. 309.01 (now 441.01)).

Earlier Ohio caselaw also indicates that false imprisonment may include implicit threats conveyed through a display of authority. In *Mitles v. Young*, the plaintiff's employer accused him of stealing over a thousand dollars from the business and summoned the police. 394 N.E.2d 335, 335 (Ohio Ct. App. 1978). After the employer and a police officer spoke out of the plaintiff's earshot, the officer approached the plaintiff and said, "Will you come with me, please." *Id.* at 337. The plaintiff agreed and the officer took him to the station and left him in a holding cell for several hours before releasing him without charges. *Id.* Appealing the jury verdict for the plaintiff on false imprisonment, the employer argued that there was no arrest because the plaintiff had voluntarily accompanied the officer. *Id.* at 336. The appellate court upheld the jury's verdict, noting that whether the officer's statement "was a request or a command depends on the intonation of the officer's voice. It is certain that one accused of being responsible for a large money shortage by his employer would hardly be brave enough to resist such a display of authority." *Id.* at 337.

The threat in question, moreover, need not be the threat of violence—a threat to a plaintiff's personal liberty can suffice for a jury to find false imprisonment. *Ware*, 2006 WL 513960, at *3. In *Ware*, the plaintiff set off a store's alarm as she passed through the front door with her purse. *Id.* at *1. A clerk stopped her and asked to check her purse. *Id.* She handed him the purse and he found no merchandise, but when it passed through the door the alarm sounded a second time. *Id.* The clerk tried to take her purse a second time, but she refused to let him and told him to review the store's security footage to see she didn't take anything. *Id.* The clerk replied that he would call the police, and the plaintiff said "get to dialing" because "I don't steal." *Id.* In her deposition, the woman "explained that she felt detained because she knew if she left the store, the clerk would have taken her motor vehicle's license plate number, and the police would have arrested her at her home." *Id.* The police arrived about a half an hour later, searched her bag again, and found nothing from the store inside. *Id.* at *2. The plaintiff was released at that time. *Id.*

With regard to confinement, the *Ware* court noted that a finder of fact could conclude either that the appellant was free to go or that the clerk's summoning of the police and attempt to take the appellant's purse constituted confinement. *Id.* at *3. With regard to consent, the court determined that the trier of fact could conclude either that the plaintiff consented to the search when she told the shopkeeper to "get to dialing," or, based on the explanation given in her deposition about fearing future arrest, that she felt she could not leave. *Id.* Finding that these two issues presented a question of fact as to whether the plaintiff could have reasonably believed she was confined in the salon, the court reversed the grant of summary judgment to the defendant. *Id.* at *4.

Here, the majority concludes that "[t]he availability of egress prevents any factfinder from determining that Saucedo-Carrillo and Carrillo-Vasquez could have had a reasonable belief that they were confined." Maj. Op. at 8. But Ohio law does not support such a per se rule: *Kalbfell*, *Ware*, and *Mitles* all indicate that courts cannot dismiss a false imprisonment claim simply because there is a physical means of egress open to the plaintiff, or because the threat to a plaintiff's person or liberty is implied rather than overt. The majority attempts to distinguish *Kalbfell* and *Mitles* on the basis that Agent Shaver did not direct the plaintiffs to move anywhere in particular before Ms. Saucedo-Carrillo's admission. Maj. Op. at 9. But that isolated fact is not dispositive. As we see in *Ware*, a plaintiff can be confined where she stands—there is no requirement that a defendant must move a plaintiff in order to confine her. Instead, Ohio's objective totality-of-the-circumstances test requires consideration of all facts relevant to an event to determine whether the plaintiff could reasonably believe she was confined.

Viewing the facts in the light most favorable to the plaintiffs, the relevant circumstances are that 1) Agent Shaver turned on his turn signal and pulled into the gas station immediately after he and Ms. Saucedo-Carrillo made eye contact; 2) he parked perpendicularly across the front of her truck, blocking off her direct exit route; 3) he immediately exited his patrol vehicle and requested her identification in an "aggressive" manner without saying hello or anything else first; 4) after she produced her ID, he kept it in his possession and continued aggressively asking her targeted questions about her immigration status; 5) during this time he stood less than three feet away from her; and 6) the manner in which he parked his vehicle and his aggressive questioning frightened both plaintiffs.

I do not share the majority's conviction that "[t]hese are the actions of a law-enforcement officer speaking with members of his community" as opposed to the actions of an officer

17

"actively detaining a criminal suspect." Maj. Op. at 10. Ms. Saucedo-Carrillo's comment that she "thought maybe he was going to let me go, but he didn't let me go" reveals her understanding that she was being detained during the stop. Considering the totality of the facts in the light most favorable to plaintiffs, I cannot conclude as a matter of law that this was merely an "unfounded belief." *See Sharp*, 891 N.E.2d at 814. Rather, a reasonable trier of fact could determine that Agent Shaver's actions were a display of authority that amounted to actual or implied restraint or control over the plaintiffs' liberty. *See Kalbfell*, 2003 WL 21505264, at *4. Accordingly, I would reverse the district court's order granting summary judgment to the Government and remand the case for further proceedings.