[Cite as *Dugas v. Ohio Adult Parole Auth.*, 2022-Ohio-1923.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Greg Dugas,                                    :

        Plaintiff-Appellant,                :

                                                     No. 21AP-491
v.                                             :          (Ct. of Cl. No. 2021-00107JD)

Ohio Adult Parole Authority,                   :          (REGULAR CALENDAR)

        Defendant-Appellee.                 :


D E C I S I O N

Rendered on June 7, 2022


**On brief**: *Greg Dugas*, pro se.

**On brief**: *Dave Yost*, Attorney General, *Lauren D. Emery*, and *Timothy M. Miller*, for appellee.


APPEAL from the Court of Claims of Ohio

NELSON, J.

{¶ 1} While he was serving 151 days in prison as a sanction for violation of post-release control, Greg Dugas filed and then withdrew a habeas corpus action in the Pickaway County Court of Common Pleas (Case No. 2019 CI 0109) and then sought a writ of habeas corpus from the Supreme Court of Ohio against the prison warden and the Ohio Adult Parole Authority on the ground that he was being unlawfully detained. *See* July 29, 2019 Habeas Petition at 3, 4-5; *see also id.* at 10, 40 (arguing that his period of post-release control had been unlawfully tolled and that the asserted violations therefore occurred after his "PRC period expired on September 25, 2018"). By entry of September 25, 2019, the Supreme Court denied his motion for a default judgment and ordered "sua sponte, that [his] cause is dismissed for failure to state a claim." Case No. 2019-1029, September 25,

2019 Entry; *see also Dugas v. Harris*, 157 Ohio St.3d 1416, 2019-Ohio-3797 (merit decision without opinion). The following month, Mr. Dugas filed a petition presenting "[t]he same [habeas] petition * * * as a mandamus action" and asking that the Supreme Court bar the Parole Authority from exercising supervision over him; the Supreme Court granted the Parole Authority's motion to dismiss that matter, too. Case No. 2019-1415, October 18, 2019 Petition at 2, 3; *Dugas v. Adult Parole Auth.*, 157 Ohio St.3d 1518, 2019-Ohio-5289 (merit decision without opinion).

{¶ 2} On March 2, 2021, Mr. Dugas filed an action for false imprisonment against the Parole Authority in the Court of Claims of Ohio, alleging that he had been unlawfully confined under post-release control sanctions from April 2, 2019 through October 19, 2019. *See* Complaint at ¶ 14. After cross-motions for summary judgment, the trial court denied Mr. Dugas's motion and granted judgment to the Parole Authority. September 8, 2021 Entry Granting Defendant's Motion for Summary Judgment. Although it disagreed with Mr. Dugas's construction of the law regarding post-release control, the trial court first and foremost rested its ruling on res judicata grounds: Mr. Dugas's habeas petition had claimed that he was being unlawfully confined, the trial court observed, and he therefore is "estopped from relitigating the issue of whether his confinement was lawful here, i.e., whether defendant confined him without lawful privilege. Consequently, [the Parole Authority] is entitled to summary judgment as a matter of law." *Id*. at 5-6. Because we believe that binding precedent compels us to adopt the same conclusion, we will affirm the trial court's judgment after outlining the case that Mr. Dugas advances.

{¶ 3} Contrary to the suggestion of the Parole Authority, our review of a grant of summary judgment (as with issues of law more generally) is de novo. *Compare* Appellee's Brief at 10-11 (advocating a "hybrid" standard of review that might be appropriate in certain instances involving post-trial determinations based on bench trial factfinding) *with*, *e.g.*, *Dailey v. Wainwright*, 161 Ohio St.3d 233, 2020-Ohio-4519, ¶ 11 ("[w]e review de novo a decision to grant summary judgment"). The essential, undisputed facts as we glean them from the record are perhaps, for purposes of understanding Mr. Dugas's position, best presented in the form of a timeline:

On **November 25, 2013**, the Monroe County Court of Common Pleas accepted Mr. Dugas's pleas of guilty to escape (a third-degree felony) and to grand theft auto (a

fourth-degree felony) and sentenced him to a total of 24 months in prison. That court advised Mr. Dugas that following his release from prison, he could be subject to a three-year period of post-release control, violation of which could trigger administrative sanctions totaling up to one-half of his stated prison term. November 25, 2013 Monroe County C.P. Judgment Entry.

On **September 25, 2015**, Mr. Dugas "was released from [prison] * * * in the custody of DRC, under the supervision of the Ohio Adult Parole Authority." Affidavit of Parole Board Hearing Officer Michael Anderson at ¶ 8; *see also* April 24, 2019 APA Special Minutes (reflecting that that Mr. Dugas "was paroled on 9-25-15").

Also on **September 25, 2015**, Mr. Dugas "was taken into the custody of the West Virginia Division of Corrections pursuant to an out-of-state detainer to complete his sentence for Reckless Fleeing in a Vehicle [for] which he had been sentenced" previously. Anderson Affidavit at ¶ 9; Complaint at ¶ 5.

On **June 24, 2018** (or June 29, 2018 according to ¶ 6 of the Complaint; the five-day difference happens not to be material to the argued question of law), Mr. Dugas was released from the custody of the West Virginia prison authorities. Anderson Affidavit at ¶ 13.

On **April 24, 2019** (some three and a half years after his release from Ohio prison under APA supervision, and some eight months after his release from confinement in West Virginia), the Parole Authority declared Mr. Dugas a Violator at Large, effective March 4, 2019. April 24, 2019 APA Special Minutes. He was "restored to parole status" effective April 23, 2019 while back in Ohio custody. April 24, 2019 APA Special Minutes.

On **May 21, 2019**, the Parole Authority conducted a hearing on nine allegations that Mr. Dugas had violated post-release control. All but one of the charged violations related to various dates between February and April 2019, and most related to failures to report, trespassing, damage to property, or possession of drug paraphernalia. One count alleged that on June 24, 2018, he had failed to comply with a post-release control condition involving mental health intervention and medication compliance. Mr. Dugas "opted to waive appearance at this hearing and admitted to all of the [nine] charges with the exception of [one count alleging entering property without consent with purpose to commit

burglary]." May 21, 2019 Sanction Receipt and Prison Term Order, with attachments. The Parole Authority found him guilty of all charges and imposed the 151-day sanction. *Id*.

Two months later, on **July 29, 2019**, Mr. Dugas filed his habeas petition with the Supreme Court of Ohio.

**{¶ 4}** The parties do not dispute that upon his release from prison in Ohio on September 25, 2015, Mr. Dugas was placed on three years of post-release control. What they have argued over is whether his West Virginia prison stint that immediately followed that Ohio release appropriately "tolled" (that is, stopped the time from running on) the post-release control period. If it did, then the Parole Authority was within its powers to maintain supervision over him and conduct its hearing and impose sanctions. If the tolling was not proper, Mr. Dugas submits, then the Parole Authority lacked legal justification to reincarcerate him on post-release control violations not alleged until more than three years after the September 25, 2015 release.

**{¶ 5}** Mr. Dugas makes a straightforward legal argument. Statutory law in effect at all relevant times, he emphasizes, directed that: "Any period of post-release control shall commence upon an offender's actual release from prison." *See* 2019 R.C. 2967.28(F)(4). Although that language appears to have been removed from the law effective September 30, 2021, *see* R.C. 2967.28, it was there when he was sentenced for his underlying offenses, when he was released from an Ohio prison in 2015, when he was charged with and sanctioned for post-release control violations in 2019, and even when the summary judgment motion in his wrongful imprisonment case was decided in September of 2021.

**{¶ 6}** Everyone agrees, he notes, that his actual release from prison in Ohio was September 25, 2015. *See, e.g.*, May 21, 2019 Sanction Receipt and Prison Term Order (reciting that Mr. Dugas "was released to post-release control on <u>Sep 25, 2015</u> under the supervision of the Ohio Adult Parole Authority"); Appellee's Amended Brief at 8 (acknowledging that "On September 25, 2015, Mr. Dugas completed his prison sentence and was released under the supervision of APA"). Under the law, that's when his post-release control term had to "commence." Former R.C. 2967.28(F)(4). From there, he urges, a simple mathematical calculation establishes that his three-year post-release control term, and with it the power of the Parole Authority to return him to prison for

infractions, expired September 25, 2018. The Parole Authority, he maintains, thus lacked any justification for charging him and returning him to prison in 2019.

{¶ 7} But, responds, the Parole Authority, its policies and practices specify that: "If a PRC offender [that is, as we understand the term, an offender who is on post-release control] is released * * * to an * * * out-of-state detainer, the time between the date the offender is released to the detainer and the date the offender is released from the detaining authority shall be considered lost time." Parole Authority Policy 100-APA-27(VI)(D)(2). The policy further recites that: "Pursuant to ORC 2967.15, lost time is the specific period of time during which an offender's period of supervision or prison term is tolled or not credited. Lost time can result from being declared a violator-at-large, violator in custody out-of-state, * * * or other reasons. Lost time can modify an offender's * * * close of supervision date." Parole Authority Policy 100-APA-27(IV) (definition of "lost time"). On that basis, the Parole Authority reasons, Mr. Dugas's post-release control period was tolled during his West Virginia incarceration from September 25, 2015 to June 24, 2018, and the events of 2019 came well within his three years of post-release control.

{¶ 8} Parole Authority Policy cannot trump Ohio statute, Mr. Dugas counters. The General Assembly has specified when a post-release control period is to be tolled, and has restricted such tolling to matters arising from new conduct by someone already on post-release control after his or her initial release from prison (and the consequent start of that person's post-release control term). R.C. 2967.15(C)(1) dictates that: "The time between the date on which a person * * * is declared to be a [post-release control] violator or violator at large and the date on which that person is returned to custody in this state under the immediate control of the adult parole authority shall not be counted as time served * * * as a part of the term of post-release control." By its plain terms, R.C. 2967.15 tolls time only for post-release control "violator[s]," he contends, and he was not declared a violator until after his three-year post-release control period had expired. *Compare* R.C. 2967.15(D) ("A person * * * who has violated a term or condition of the person's * * * post-release control shall be declared to be a violator if the person is committed to a correctional institution outside the state * * *.").

{¶ 9} The legislature has explicitly identified the circumstances under which post-release control periods are to be tolled, Mr. Dugas explains, and the Adult Parole Authority

cannot invoke administrative "policy" to amend that law. *See*, *e.g.*, Appellant's Amended Brief at 6 (quoting from R.C. 2967.15 as the governing " 'explicit textual source' "). The statutes tell the Parole Authority when to start counting the post-release control period (which, pursuant to former R.C. 2967.28(F)(4) was to "commence" upon an offender's release from Ohio prison), and, pursuant to R.C. 2967.15, when to stay the count, Mr. Dugas contends.

{¶ 10} The Parole Authority in its briefing to us does not respond directly to Mr. Dugas's statutory argument as premised on R.C. 2967.15. Nor does it mention former R.C. 2967.28(F)(4). Rather, it attempts to bootstrap statutory license by making reference to a grant of rule-making authority relating to its "imposition" of "sanctions" for post-release control violations—a matter somewhat afield, perhaps, from the question of when statutorily limited periods of post-release control may be extended through tolling. *See* Appellee's Brief at 13-14 (citing R.C. 2967.28(E)).

{¶ 11} The trial court in its alternative rationale adopted that rule-making argument, repeating that R.C. 2967.28(E) provides the Department of Corrections power "to adopt rules to assist the [Parole Authority] in determining post-release control sanctions." Summary Judgment Decision at 6. Recognizing that here the issue is not so much the determination of particular sanctions but whether the post-release control term remained in effect at the time sanctions were imposed, the trial court went on to invoke the Parole Authority's Policy 100-APA-27(VI)(D)(2). That policy, the trial court said, was adopted "[p]er [the] authority" of R.C. 2967.28(E). Summary Judgment Decision at 6. We note that the policy itself recites that its authority comes from the far more general provisions of R.C. 5120.01 (relating not to post-release control specifically, but to the powers of the Director of the Department of Rehabilitation and Correction).

{¶ 12} Moreover, the policy itself recites that its definition of "lost time" is established "[p]ursuant to ORC 2967.15"—the statutory section invoked by Mr. Dugas to show that tolling is triggered by post-release control violator status, not by conduct adjudicated before the commencement of post-release control. Parole Authority Policy 100-APA-27(IV) ("lost time" definition). And the policy states its "purpose" as being "to establish a standard procedure for the calculation and determination of lost time pursuant to [actual] Administrative Rule 5120.1-1-31." Parole Authority Policy 100-APA-27(II)

("Purpose"). That administrative rule appears to relate, again, to violations committed after supervision has begun: thus, the first subsection sets the scope of the rule by providing authority to file a detainer against an offender "whenever there is reasonable cause to believe that such offender has violated or is about to violate any of the terms or conditions of his supervision or sanction and commits an overt act toward such violation." Ohio Adm.Code 5120:1-1-31(A). But again, neither the trial court nor the Parole Authority in its briefing here reckon with the implications of R.C. 2967.15.

{¶ 13} Against that backdrop of the arguments on the merits of the tolling in Mr. Dugas's case, we turn to the specific assignments of error that Mr. Dugas posits. He asserts:

> [I.] The facts set down by Judge Sheeran are erroneous and, are so in error as to be subject to a Plain Error Rule;
>
> [II.] Res judicata does not apply as Judge Sheeran has determined, that is a plain error;
>
> [III.] Judge Sheeran's construction of "False Imprisonment" on pages 6-7 of his order, including his purported reliance upon the case of Florence v. Ohio Adult Parole Auth., C.R. No. 08CVH08-12427, 2009-Ohio-Misc. LEXIS 5547 at * 10 (Sept. 3, 2009), is all in error;
>
> [IV.] Judge Sheeran's "rubber-stamping" of the APA's internal tolling policy, § 100-APA-27(V)(D)(2), [as] [a] [lawful] [policy], is in error; the policy is unlawful ON ITS FACE;
>
> [V.] Even if the said policy, § 100-APA-27(V)(D)(2), is upheld as lawful on its face, Judge Sheeran's case-specific finding in this particular case are in error nonetheless because the APA did NOT – in this specific case – use its requisite statutory procedures (i.e., Special Minutes Forms/Parole Board Minutes) to actually, i.e., FACTUALLY TOLL Dugas's PRC period;
>
> [VI.] NO TOLLING OCCURRED in this case, factually, nor could it occur; legally; Dugas's Monroe County PRC term lawfully expired on September 25, 2018, and because NO TOLLING OCCURRED nor could occur, Dugas's [re]incarceration after that date was – as both legal and factual matters, "without lawful authority."

(Sic passim.)

{¶ 14} Mr. Dugas's argument under his first assignment of error evidences concern (understandable concern, in light of his legal argument) that the trial court's factual account, like the Anderson affidavit it cites, muddies the date on which he was declared a post-release control Violator at Large, and thereby perhaps inadvertently suggests that that tolling event may have fallen within three years of his September 2015 Ohio prison release. *See, e.g.*, Entry Granting Summary Judgment at 3 ("The West Virginia Division of Corrections released plaintiff on June 24, 2018, but plaintiff failed to comply with the reporting obligation imposed by his PRC and was declared by the APA to be a violator at large"); Anderson Affidavit at ¶ 13-14 ("Mr. Dugas was released from the custody of the West Virginia Division of Corrections on June 24, 2018. * * * In spite of his reporting obligations, Mr. Dugas failed to report to the Ohio Adult Parole Authority upon his release and he was declared to be a violator at large").  But the trial court made no affirmative misstatement of fact there, and the trial court's ruling was not based on a premise that tolling was unnecessary to the imposition of sanctions.  We overrule Mr. Dugas's first assignment of error.

{¶ 15} Mr. Dugas argues under his second assignment of error that the trial court was wrong about the res judicata effect of the Supreme Court's dismissal of his habeas petition for failure to state a claim.  His position, in effect, would permit a prisoner to mount a Supreme Court challenge to the legality of his confinement on post-release control violation, lose that case (perhaps after making arguments obscured by tangential explorations), serve out the balance of his sanction, and then maintain suit against the Parole Authority for wrongful imprisonment.  Because we will overrule Mr. Dugas's second assignment of error and affirm the trial court's judgment on the basis of its res judicata conclusion, our determination of this assignment of error will control the result of the appeal and we will not rehearse the other assignments.

{¶ 16} "Under the doctrine of res judicata, 'a final judgment or decree rendered on the merits by a court of competent jurisdiction is a complete bar to any subsequent action on the same claim between the same parties or those in privity with them.' "  *Jones v. Wainwright*, 162 Ohio St.3d 491, 2020-Ohio-4870, ¶ 6, quoting *Brooks v. Kelly*, 144 Ohio St.3d 322, 2015-Ohio-2805, ¶ 7 (and adding that therefore "[r]es judicata bars a successive habeas petition when the petitioner either raised or could have raised the same issues in his

first habeas action"); *see also, e.g., Dailey*, 2020-Ohio-4519, at ¶ 12 (merits judgment bars subsequent action between parties on same claim).

{¶ 17} As the trial court noted, Summary Judgment Decision at 5, we previously have held that a ruling on a habeas petition involving whether a prisoner was unlawfully held can estop the parties in a wrongful imprisonment suit "from relitigating the issue of whether [the prisoner] was unlawfully held." *Stroud v. Dept. of Rehab. & Corr.*, 10th Dist. No. 03AP-139, 2004-Ohio-580, ¶ 23 (further noting at ¶ 25, citations omitted, that " '[f]alse imprisonment occurs when a person confines another intentionally " 'without lawful privilege and against his consent' " ' "). If Mr. Dugas is estopped from relitigating the lawfulness of his confinement (that is to say, the issue of whether the Parole Authority had privilege to hold him), his wrongful imprisonment case appropriately fails on summary judgment. *See* Summary Judgment Decision at 5-6.

{¶ 18} Here, Mr. Dugas does not contest the identity of the parties involved, but in effect contests whether the Supreme Court's dismissal of his habeas petition for failure to state a claim was a determination on the merits of whether he was unlawfully held. He argues that a sua sponte dismissal for failure to state a claim never can be a dismissal on the merits. *See, e.g.,* Appellant's Amended Brief at 63 (emphasis in original) ("there is simply NO WAY the Supreme Court itself would even consider undertaking a full merits determination of an Ohio offender's habeas corpus claim on a sua sponte basis; if the Supreme Court's intention was to in fact rule on the case's substantive merits, then that necessarily means the Supreme Court has determined that the action DID IN FACT state a claim upon which relief 'can be granted' ").

{¶ 19} That is not our understanding of binding Supreme Court precedent. The Supreme Court has instructed:

> [D]ismissal grounded on a complaint's 'failure to state a claim upon which relief can be granted' constitutes a judgment that is an 'adjudication on the merits.' As a result, res judicata bars refiling the claim. *See Hughes v. Calabrese*, 95 Ohio St.3d 334, 2002 Ohio 2217 (this court's earlier dismissal of a prohibition complaint barred a successive complaint brought in an appellate court). Because the appellate court's dismissal of the previous action [for failure to state a claim] invokes res judicata, it " ' "bars all subsequent actions based upon any claim

> arising out of the transaction or occurrence that was the subject matter of the previous action." ' "

*State ex rel. Arcadia Acres v. Ohio Dept. of Job & Family Servs.*, 123 Ohio St.3d 54, 2009-Ohio-4176, ¶ 15 (further citations omitted).

{¶ 20} We have noted that this holding came less than a year after the Supreme Court had said in *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, ¶ 17, that "a dismissal for failure to state a claim is without prejudice except in those cases where the claim cannot be pleaded in any other way. *Collins v. Nat'l City Bank*, 2d Dist. No. 19884, 2003-Ohio-6893, ¶ 51." In *George v. State*, 10th Dist. No. 10AP-4, 2010-Ohio-5262, ¶ 14, we observed that "*Arcadia Acres * * * clearly concludes that a dismissal, pursuant to Civ.R. 12(B)(6), is with prejudice to refiling * * *." *Arcadia Acres*, we further noted, "does not distinguish nor even mention the conflicting statements in *Fletcher*. Nonetheless, *Arcadia Acres* represents the latest clear pronouncement by the Supreme Court of Ohio on the issue and as such we are bound to follow it." *Id.* In keeping with the decision of this court in *George*, we again acknowledge that we are not in a position to overrule precedent from the Supreme Court. *See also Clemons v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 13AP-691, 2014-Ohio-1259, ¶ 15 ("a dismissal for failure to state a claim upon which relief can be granted operates as an adjudication on the merits," citing *Arcadia Acres* and *George*); *One Energy Ents., LLC v. Ohio Dept. of Transp.*, 10th Dist. No. 17AP-829, 2019-Ohio-359, ¶ 25 (citing *Arcadia Acres* and *George*). Further, we are not persuaded under the undisputed facts of this case that the earlier sort of analysis would avail Mr. Dugas in any event.

{¶ 21} Mr. Dugas cites to *Collins* from the Second District Court of Appeals as invoked by *Fletcher*, but that case preceded *Arcadia Acres*. Acknowledging that his habeas petition had "attempted * * * to litigate the intrinsic merits of the tolling policy" that he seeks to put at issue in this subsequent case, Appellant's Amended Brief at 60 (emphasis omitted), he makes effort to pursue a rationale that could fit with *Collins*. He postulates that the Supreme Court dismissed his habeas petition for failure to state a claim because R.C. 2725.05 prohibits the sort of claim he made about being held unlawfully through a sanction for postconviction release violation. *Id.* at 60-61. We are not persuaded, in part because R.C. 2725.05 bars use of the habeas writ where the petitioner was "under process

issued by a court or magistrate, or by virtue of the judgment or order of a court," and does not speak to Parole Authority findings of violation.

**{¶ 22}** We find no authority that R.C. 2725.05 precludes a habeas claim in the context raised by Mr. Dugas. Claims that a prisoner is being held beyond the expiration of his sentence or contrary to constraints on the Parole Authority have been advanced through habeas petitions. *See, e.g., Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, ¶ 12 (superseded by statute on other matters) ("Hernandez is not challenging his sentencing entry. He is instead challenging the Adult Parole Authority's decision -- not a court's decision -- to place him on postrelease control and the APA's subsequent decision to sanction him for violating the terms of that control. Habeas corpus will lie to challenge certain decisions of the Adult Parole Authority because there is no remedy of appeal available. See *State ex rel. Jackson v. McFaul* (1995), 73 Ohio St.3d 185, 187"); *see also, e.g., State ex rel. Bryant v. Warden, Franklin Med. Ctr.*, 10th Dist. No. 20AP-258, 2021-Ohio-562, ¶ 8 (dismissing habeas claim where "petitioner's maximum sentence has not yet expired and petitioner has not been unlawfully restrained"); *compare Coleman v. Stobbs*, 23 Ohio St.3d 137 (1986) (establishing two-part test for determining whether APA delay in holding parole revocation hearing entitles alleged violator to habeas relief).

**{¶ 23}** We conclude that that the trial court was correct in finding on the undisputed facts that the Supreme Court's dismissal of Mr. Dugas's habeas petition for failure to state a claim does have preclusive, res judicata effect. The Ohio Court of Appeals for the Eleventh Appellate District had occasion very recently to determine that a Supreme Court dismissal of a writ action for failure to state a claim upon which relief can be granted, as expressed in "a merit decision without an opinion," bars re-litigation of the same issue between the parties. *State ex rel. Peaspanen v. Ashtabula Cty. Auditor's Office*, 11th Dist. No. 2020-A-0052, 2022-Ohio-166, ¶ 1, 33-38 (quoting extensively from *Arcadia Acres*). So too here.

**{¶ 24}** We overrule Mr. Dugas's second assignments of error and affirm the judgment of the Court of Claims of Ohio on that basis. Mr. Dugas's third, fourth, fifth, and sixth assignments of error therefore become moot and we overrule them for that reason. We already have overruled his first assignment of error. Further, we deny as moot a motion by Mr. Dugas to lengthen deadlines for any future filings in this matter, and we deny his

two motions to review and overrule earlier procedural rulings made in the course of this appeal by a judge of this court.

*Motions denied; judgment affirmed.*

LUPER SCHUSTER, P.J., and JAMISON, J., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

_____